Parker, J.
The plaintiff, being a citizen of the commonwealth; *487 more than twenty-one years of age, and of competent property, is without doubt entitled to vote somewhere within the state for state officers.
By the facts reported in this case, it is manifest that Andover or Danvers is the place where the plaintiff has his home, within the true intent of the constitution. Although he was born in Danvers, and that is still the domicile *of his father, yet [ * 500 ] he was of an age to emancipate himself, and obtain a home in some other town. He went to Andover, and had resided there a few days short of a year, previous to the election in April, 1813. A year’s residence was not necessary to entitle him to vote in that town; it was sufficient that he made that his home. He had left his father’s family several years before, and had become a resident in Salem, where he was taxed and permitted to vote. His father had ceased to support him since the year 1809, before which time he was also of age ; and he was at Salem, preparing himself for an independent living, until the spring of 1812, when he removed to Andover, to pursue his theological studies there, which, as he was on the charitable foundation, required a residence of three years.
Was Andover, then, his dwelling-place or home ? This is the question now to be solved. It is manifest that Danvers was not; for he had abandoned it, and did not keep up his connection with his father’s family, as was the case of Emmons in Granby vs. Amherst, cited in the argument. He could not vote in Danvers, for his home was not there. He must, then, have a right to vote in Andover, or be subjected to a temporary disfranchisement, in consequence of his having no home in any place.
The objection most insisted on by the counsel for the defendants is, that the plaintiff did not go to Andover with an intention to remain there; but merely for the purpose of instruction, and therefore that he could not exercise any of his civil privileges within that town; although it was admitted that a mechanic or day-laborer, otherwise qualified, making Andover his home, by residing and dwell iug there, would be a legal voter there.
A residence at a college or other seminary, for the purpose ol instruction, would not confer a right to vote in the town where such an institution exists, if the student had not severed himself from his father’s control, but resorted to his house as a home, and continued under his direction and management. But such residence will give a right to vote * to a citizen not under [ * 501 j pupilage, notwithstanding it may not be his expectation to remain there forever.
The definition of domicile, as cited from Vattel by the counsel fot the defendants, is too strict, if taken literally, to govern m a ques *488 tion of this sort; and, if adopted here, might deprive a large portion of the citizens of their right of suffrage. He describes a person’s domicile as the habitation fixed in any place, with an intention of alivays staying there. In this new and enterprising country, it is doubtful whether one half of the young men, at the time of their emancipation, fix themselves in any town with an intention of always staying there. They settle in a place by way of experiment, to see whether it will suit their views of business and advancement in life; and with an intention of removing to some more advantageous position if they should be disappointed. Nevertheless, they have their home in their chosen abode while they remain. Probably the meaning of Vattel is, that the habitation fixed in any place, without any present intention of removing therefrom, is the domicile. At least, this definition is better suited to the circumstances of this country.
But several cases have been cited from our own reports, which are supposed to be analogous to the case at bar, in which the settlement of paupers has been decided upon more strict principles than are now suggested. The case of Granby vs. Amherst is the strongest ; and it is manifest that there is nothing, even in that case, which contradicts the principles now advanced. The pauper there left Belchertown and went to Dartmouth College, merely for the purpose of education. He was under age while at college, until a few months before he was graduated. He passed all his vacations in Belchertoiun, he liad a freehold there, and he returned to that place as soon as he had taken his degree. It was very properly held that, under these circumstances, he had not changed his domicile by going to Dartmouth College, and remaining there four years.
But the decisions of settlement cases cannot have [*502] much * influence on questions of political privileged. In the former cases, there is a conflict between two corporations on a subject of property; and they must be determined strictly according to the established rule's of property. The objects intended to be secured by the constitutional limitation of the right of suffrage to the town in which the voter has his home, were opportunity to ascertain the qualifications of the voter, and the prevention of fraud upon the public by multiplying the votes of the same person. The plaintiff had lived long enough in Andover to give the selectmen the means of scrutinizing his claims; and there was no other place where he could have a pretence for voting.
Further, a citizen may well have his home in one town, with all the privileges of an inhabitant, and yet have his legal settlement in another town! For instance, if he should reside four years in a *489 town, own and occupy real property there, gain a livelihood there for himself and his-family, without any intention of removing, he might, notwithstanding, be removed to the place of his lawful settlement, in case he should become chargeable. But it would be'hard to say he had no home there, that he did not dwell there, and therefore that he should not be permitted to vote there.
We are all of opinion that the plaintiff’s case is well made out, and that judgment must be entered on the verdict.
ADDITIONAL NOTE.
[See Harvard College vs. Gore, 5 Pick. 370. — Holyoke vs. Haskins, 5 Pick. 29 Jennison vs. Hapgood, 10 Pick. 77. — Green vs. Green, 11 Pick. 410.—F. H.]