F. E. HUNT *v.* JOHN F. RICHARDS *et al.*

*Error from Leavenworth County.*

A white male person, of twenty-one years or upwards, being a citizen of the United States, or having declared his intention to become such, as required by law, who has resided in Kansas six months next preceding any election, and in the township or ward in which he offers to vote, at least thirty days preceding such election, is a legal voter in Kansas [Art. 5, § 1, St. Const., Comp. L., 60], notwithstanding he may be an officer or soldier in the army of the United States; but a person shall not be deemed to have gained a residence for the purposes of voting, by reason of his presence in the state, while employed in the service of the United States.    [Amend't of 1864 to art. 5, § 3, Const., L. '64, 81.]

This was an action brought by plaintiff in error against the defendants in error, judges of election, for

refusing to receive the vote of plaintiff. The petition showed that the plaintiff was a resident of the ward in which he offered his vote, and had been for more than thirty days, and that he had been a resident of the state more than six months ; that he did not gain such residence by being in the army ; was a white male citizen, more than twenty-one years of age, and otherwise personally qualified to vote ; but that he was an officer in the regular army of the United States at the time. The petition was demurred to, and the demurrer sustained, and the case brought to this court on alleged error in sustaining the demurrer.

*Robert Crozier*, for plaintiff in error.

*J. L. Pendery*, for defendants in error.

*Crozier* maintained :

During the territorial existence, an officer or soldier in the regular army, otherwise qualified, had the right to vote, provided he had not acquired a residence by reason of being stationed within the territory. The constitution specifically excluded officers and soldiers of the regular army from voting, by art. 5, § 3.

During the progress of the late war, it was discovered that this clause was too sweeping, inasmuch as it included volunteers as well as regulars ; and the whole of the third section was substituted by another. The new section (*L.* 1864, *p.* 81), is as follows :

"SEC. 3. For the purpose of voting, no person shall be deemed to have acquired or lost a residence by reason of his presence or absence while employed in the service of the United States. * * * And

the legislature may make provisions for taking the votes of electors who may be absent from their townships or wards, in the volunteer military service of the United States, or the militia service of this State; but nothing herein contained shall be deemed to allow any soldier, seaman or marine in the regular army or navy of the United States, the right to vote."

It will be observed that the first section of Art. 5, would include officers of the regular army, having the qualifications therein mentioned. The new section re-enacts the first part of the repealed one, so far as acquiring a residence by reason of being stationed within the state is concerned; and then provides that absence in the military service shall not disqualify, and that provisions may be made for taking the votes of such absentees; but the last clause excludes from these provisions, persons in the regular army. The clause is not absolute on its face, as the original one was, but is qualified by being made applicable alone, to the preceding provisions in the same section. The words "herein contained" refer to the clauses concerning residence and taking the votes of persons absent in the military service. That is to say, if an officer of the regular army has a residence in the state, irrespective of his connection therewith, and is absent temporarily in the service, the provisions of the amended section do not extend to him. He can only vote at the place of his residence.

The last clause of the new section, being restrictive, should be strictly construed; and inasmuch as no violence is done to the language employed by confining it to the former provisions of the same section, it should not be extended, by construction, so as to exclude persons embraced in the first section of the article.

The word "white," according to the common acceptation of the term, excludes persons of one-fourth African blood; yet, as it is used in our constitution in a restrictive sense, it has been properly construed not to exclude quadroons. At least, equal liberality should be indulged, in construing the constitutional restrictive clause with reference to other classes.

*Pendery,* for defendants in error, referred to the amendment of art. 5, §3 of the state constitution, of 1864 (*L.* '64, *p.* 81), and contended that the last clause thereof was as absolute in prohibiting officers and soldiers of the regular army from voting, as was the constitutional provision before the amendment.

*By the Court,* BAILEY, J.

Before the adoption of the amendment to §3 of art. 5 of our state constitution, no question of this kind could have arisen. As the last clause of that section positively excluded every soldier, seaman and mariner from the exercise of the elective franchise.

The amendment to this article and section, adopted for the express purpose of enabling our citizen soldiers to vote while serving in the army as volunteers, is in these words:

"SEC. 3. For the purpose of voting, no person shall be deemed to have gained or lost a residence by reason of his presence or absence while employed in the service of the United States; nor while engaged in the navigation of the waters of this state, or of the United States, or of the high seas; nor while a student of any seminary of learning; nor while kept at any alms-house, or other asylum, at public expense;

nor while confined in any public prison. And the legislature may make provisions for taking the votes of electors who may be absent from their townships in the military service of the United States or of this state; but nothing herein contained shall be deemed to allow any soldier, seaman or mariner in the regular army or navy of the United States, the right to vote.''

That clause, so long as it remained a part of the constitution of the state, effectually barred all access to the polls, so far as the three classes mentioned in it were concerned. That clause is removed by the amendment heretofore quoted, and of course we must look to the other provisions of the article on suffrage, to determine the status of the plaintiff in error in this regard.

Section one of art. 5, lays down the general rule that ''every white male person of twenty-one years and upwards, who shall have resided in Kansas six months, next preceding any election, and in the township or ward in which he offers to vote, at least thirty days next preceding such election, being a citizen of the United States, or if of foreign birth, having declared his intention to become a citizen, shall be deemed a qualified elector.''

The case at bar shows that all these qualifications were possessed by the plaintiff in error, and that he had the right to vote unless the mere fact that he was an officer in the regular army of the United States should debar him, by virtue of the constitutional provisions on that subject.

We are clear that the only provisions ever contained in the constitution of Kansas, which could fairly be deemed to have that effect, was the anomalous clause we have quoted, which was abrogated by the amend-

ment of 1864. And perhaps it is not too much to suppose that the apparent inconsistency of disfranchising educated and patriotic native-born citizens for no other reason than that of being in the military service of the country; while at the same time "every white male person of twenty-one years and upwards," whether citizen or inchoate citizen, was admitted to exercise the right of suffrage, was one of the grounds on which the legislature proposed, and the electors ratified the amendment.

That amendment, as it seems to us, contains all the restrictive provisions necessary to prevent officers or soldiers of the army, stationed within the limits of our state, from acquiring a right to vote here while having homes elsewhere, or having no homes anywhere except the quarters or barracks provided by the government.

We conclude that a white male person of twenty-one years or upwards, being a citizen of the United States, or having declared his intention to become such, as required by law, who has resided in Kansas six months next preceding any election, and in the township or ward in which he offers to vote, at least thirty days preceding such election, is a legal voter in Kansas; notwithstanding he may be an officer or soldier in the army of the United States, provided, always, that he shall not be deemed to have gained a residence for the purpose of voting, by reason of his presence while employed in the service of the United States.

As the plaintiff in error is admitted to have had all of the required qualifications at the time his vote was refused, the judgment of the court below must be reversed.

All the justices concurring.