Filed Jan. 24, 1888.

No. 13,848.

PEDIGO v. GRIMES.

ELECTION.—*Contest of.*—*Trial by Jury not Allowed.*—In contested election cases a trial by jury is not permissible.

SAME.—*Secrecy of Ballot.*—*Illegal Vote.*—*Presumption.*—In a contested election proceeding, the voter can not be compelled to disclose the names of the persons for whom he voted, unless (as provided by statute, the validity of which is not passed on) the vote was illegal; and the legal presumption is in favor of the legality of the vote, which presumption must be overthrown before the witness can be compelled to make the disclosure.

SAME.—*Residence.*—*Student.*—*Qualification of Voter.*—*Intention.*—A student, who goes to a college town with the intention of remaining simply as a

student, and who does not change his intention, does not acquire a residence; but where the intention is formed at any time to make such town his domicile, in good faith, and to the exclusion of all other places, he becomes a citizen, and, being otherwise qualified, is entitled to vote, although he intends to remain only during a limited period.

SAME.—*Evidence.*—*Fraud.*—A party to a contested election proceeding is entitled to show, by direct or indirect evidence, that there was fraud on the part of the election officers, resulting in his injury, that votes cast were illegal, or that, by changing the ballots, or by wrongfully interfering with the election papers, a greater number of votes were credited to his opponent than he was entitled to; and the right to this evidence is not affected by the fact that illegal votes were cast for such party, or that frauds were perpetrated in his interest.

SAME.—*Ballots Best Evidence.*—*Presumption.*—In such a case the ballots are the best evidence, and are *prima facie* valid if they come from the proper place and the proper custodian; but they may, nevertheless, be attacked, and the presumption in their favor be overthrown by evidence either direct or indirect.

WITNESS.—*Cross-Examination.*—*Practice.*—A party who introduces a witness and examines him upon a given subject, can not successfully object to a cross-examination on that subject because a question asked on direct examination was not answered.

From the Orange Circuit Court.

*J. W. Buskirk, H. C. Duncan, R. W. Miers, E. Corr, W. Farrell, R. A. Fulk* and *M. S. Mavity,* for appellant.

*J. H. Louden* and *W. P. Rogers,* for appellee.

ELLIOTT, J.—The appellee, proceeding under the statute providing for the contest of election, filed a written statement contesting the election of the appellant to the office of auditor of Monroe county. By appeal the case went to the Monroe Circuit Court, and thence, by change of venue, to the Orange Circuit Court.

The court did not err in denying the appellant's request for a trial by jury. Our cases hold that a jury trial is not demandable in contested election cases, and they are supported by authority. *Knox* v. *Fesler,* 17 Ind. 254; *Cory* v. *Segar,* 62 Ind. 60; *Ewing* v. *Filly,* 43 Pa. St. 384; *Hulseman* v. *Rems,* 41 Pa. St. 396; *Ford* v. *Wright,* 13 Minn. 518; *Williamson* v. *Lane,* 52 Texas, 335; *Wright* v. *Fawcett,* 42

Texas, 203; *Grier* v. *Shackleford*, 3 Brev. 491; *State* v. *Harmon*, 31 Ohio St. 250; *State* v. *Marlow*, 15 Ohio St. 114; *Luther* v. *Borden*, 7 How. 1.

Three witnesses introduced by the appellant, Fesler, Hooper and Rabb, were examined at much length upon the question of residence, and at the close of the direct examination the court said to counsel for the appellee: "You are now entitled to examine the witness on that one question of residence."

The contention of appellant is, that it was error to permit a cross-examination, because one question asked by his counsel of each of the witnesses was not answered. The contention upon this point is not that there was error in not compelling an answer, but that there was error in permitting a cross-examination. We perceive no foundation for this position. If appellant elected to make the witnesses his own, and to examine them in chief as to any subject, he opened that subject to cross-examination. *Louisville, etc., R. W. Co.* v. *Falvey*, 104 Ind. 409.

As he did open on a subject, and did avail himself of the benefit of the examination in chief, he certainly can not complain because the court did not deny a cross-examination upon that subject.

Three witnesses, Hooper, Fesler and Rabb, were asked on the direct examination to say for whom they voted for the office here in controversy, but the court declined to compel them to answer. It is the theory of our law that the ballot is secret, and no man who casts a lawful ballot can be compelled to disclose the names of the persons for whom he voted. *Williams* v. *Stein*, 38 Ind. 89 (10 Am. R. 97); Cooley Const. Lim. (5th ed.), 760.

Where, however, the vote is illegally cast, the voter may, so our statute provides, be compelled to make disclosure. Accepting, without inquiry, this statute as valid, the question which first presents itself is, whether the votes were illegally cast, and this question must, in the first instance,

be decided by the trial court upon the evidence. It appears, therefore, that a question of fact was presented for the decision of the court, and where this is so the decision will be upheld unless it is clearly erroneous. The principle that the appellate court will not disturb the finding of the trial court upon a question of fact is a familiar one, and is illustrated in a great variety of cases. *Shular* v. *State*, 105 Ind. 289 (55 Am. R. 211); *Lexington, etc., R. R. Co.* v. *Ford Plate Glass Co.*, 84 Ind. 516. We must, therefore, uphold the finding of the trial court on this question of fact, unless it is clearly shown to be wrong.

It is presumed that the voters were not guilty of an unlawful act, and before they could be compelled to make disclosure it was incumbent on the appellant to remove this presumption. This presumption, like a *prima facie* case, stands until overthrown. *Bates* v. *Pricket*, 5 Ind. 22 (61 Am. Dec. 73); *Adams* v. *Slate*, 87 Ind. 573 (575); *Cleveland, etc., R. R. Co.* v. *Newell*, 104 Ind. 264 (54 Am. R. 312); *Louisville, etc., R. W. Co.* v. *Thompson*, 107 Ind. 442.

The strength of this presumption is augmented by the fact that the law is very careful to preserve inviolate the secrecy of the ballot. *People* v. *Cicott*, 16 Mich. 283.

We can not, therefore, disturb the decision of the court, unless the testimony clearly shows that the persons who were asked to state for whom they voted cast illegal votes. This the testimony does not show. Taking the view of the testimony most favorable to the appellant, the utmost that can be said of it is, that the voters entered the State University at Bloomington without at the time of entering having formed a definite intention of making that place their residence, but that they did subsequently determine that it should be their residence. This gave them the right to vote, because there is no evidence that this was not their intention, formed and acted upon in good faith. We think it clear, that if they had gone to Bloomington with the intention of remaining simply as students, and there was no change of intention, they would

not have acquired a residence.     *Granby* v. *Amherst,* 7 Mass.
1 ; *Fry's Election Case,* 71 Pa. St. 302 (10 Am. R. 698) ; *Dale*
v. *Irwin,* 78 Ill. 170 ; *Vanderpoel* v. *O'Hanlon,* 53 Iowa, 246.

Where, however, the intention is formed to make the col-
lege town the place of residence, and that place is selected as
the domicile, then the person who does this in good faith be-
comes a qualified voter.

In *Vanderpoel* v. *O'Hanlon, supra,* the court said, speak-
ing of a student : " It would probably be admitted, if, when
he went to Iowa City, or at any time thereafter before he
offered to vote, his intention was to make that place his home
and residence when he ceased to attend the university, that
such place was and became his place of residence in such a
sense that he would have become a legal voter in Johnson
county."     Judge McCrary says :     " It will be found from an
examination of these authorities, and from a full considera-
tion of the subject, that the question whether or not a stu-
dent at college is a *bona fide* resident of the place where the
college is located, must in each case depend upon the facts.
He may be a resident and he may not be.     Whether he is or
not depends upon the answer which may be given to a
variety of questions, such as the following :     Is he of age ?
Is he fully emancipated from his parents' control ?     Does he
regard the place where the college is situated as his home, or
has he a home elsewhere to which he expects to go, and at
which he expects to reside ? "     McCrary Elections, sec. 41.

The case of *Sanders* v. *Getchell,* 76 Maine, 158 (49 Am.
R. 606), is a strong one, for there the Constitution of the State
provided that " The residence of a student at any seminary
of learning shall not entitle him to the right of suffrage in
the town where such seminary is situated," yet it was held
that a student might acquire a residence.     In the course of
the opinion it was said : " It is clear enough that residing in
a place merely as a student does not confer the franchise.
Still a student may obtain a voting residence, if other condi-
tions exist sufficient to create it.     Bodily residence in a place,

coupled with an intention to make such a place a home, will establish a domicile or residence."

It can, we conceive, make no difference that the person is a student, if he has in good faith elected to make the place where the college is located his residence, since there is no imaginable reason why a person may not be both a student at a college and a resident of the place where the college is situated. If he is at the place merely as a student, then he is not a resident; but if he has selected that place as his abode, he acquires a residence which entitles him to vote, if he possesses the other qualifications.

It is said by appellant's counsel that "To effect a change of domicile, there must be intention and act united—the fact of residence and the intention of remaining." In support of this proposition, counsel cite McCrary Law of Elections, 39, 40; Cooley Const. Lim. 604; 2 Kent Com. 431; *Astley* v. *Capron*, 89 Ind. 167; *Culbertson* v. *Board, etc.*, 52 Ind. 361; *McCollem* v. *White*, 23 Ind. 43; *Maddox* v. *State*, 32 Ind. 111.

The counsel's statement is, doubtless, an accurate one, but here the intention and the act, as the trial court found, did unite, and we think this finding is fully sustained by the testimony before the court. It is not necessary, however, that there should be an intention to remain permanently at the chosen domicile; it is enough if it is for the time the home of the voter to the exclusion of other places. Judge Cooley says: "A person's residence is the place of his domicile, or the place where his residence is fixed without any present intention of removing therefrom." Cooley Const. Lim. (5th ed.) 754. Judge Story makes substantially the same statement of the rule. Conflict of Laws, section 43.

In the case of *Cessna* v. *Meyers*, reported and strongly approved by Judge McCrary, it was said: "A man may acquire a domicile, if he be personally present in a place and elect that as his home, even if he never design to remain there always, but design at the end of some short

time to remove and acquire another. A clergyman of the Methodist church who is settled for two years may surely make his home for two years with his flock, although he means, at the end of that period, to remove and gain another." McCrary Elections, p. 496 ; *Id.*, section 38. This principle was applied to the case of a student of Andover college, in *Putnam* v. *Johnson*, 10 Mass. 488, where it was said: "A residence at a college or other seminary, for the purpose of instruction, would not confer a right to vote in the town where such an institution exists, if the student had not severed himself from his father's control, but resorted to his house as a home, and continued under his direction and management. But such residence will give a right to vote to a citizen not under pupilage, notwithstanding it may not be his expectation to remain there forever." In this instance, the citizens, having taken up a residence in Bloomington and having no other home, were entitled to vote there, although they may not have intended to remain there always. It is frequently said in the books that a man must have a home somewhere, and it is agreed that this home is at the place where he is bodily present with the intention of making it his domicile, although he may have in view a change of residence at some future time. Cooley Const. Lim., 754; McCrary Elections, section 39.

The intention to remain is, as Judge McCrary says, "entirely consistent with a purpose to remove at some future indefinite time." It can hardly be doubted that a man living in Evansville is a resident of that city, although he may intend to remove to Indianapolis either at a fixed time or at an indefinite period in the future. So, if a man should take a business position at Bloomington, intending to remain as long as the business required, he would acquire a residence at that place, even though his purpose may be to return at some future time to the place of his former residence. Of course, a removal without any intention of making the place the domicile would not secure a residence, no matter how

long the person intended to remain; but if the intention was to make the place the domicile, a legal residence would be acquired.

The question asked the witnesses Hooper, Fesler and Rabb was also asked the witness Kinzie, but, as the record shows, he was required to answer, and did substantially answer, so that no available point can be made on the ruling on the question presented on his testimony.

We have followed counsel in their argument without deciding, or assuming to decide, directly or indirectly, whether the question for whom he voted can in any case be asked a voter. We have taken it as granted, for the sake of the argument, that our statute is valid. In the absence of any argument, we have thought it better to refrain from expressing any opinion upon the validity of the statute. McCrary Elections, section 297.

The evidence introduced by the parties showed that the ballots of the electors were "strung," as the law requires, and were placed in a bag and sealed in accordance with the provisions of the statute. All the officers through whose hands the ballots passed testified that they had not been tampered with, and the officers in charge of the sealed bags testified that the seals had not been broken, and that there had been no change of the ballots in any shape or form.

David W. Barron was called by the appellant, and a question was propounded to him, to which an objection was interposed. Upon this objection the court directed an argument, and after the argument requested counsel to put their question so as to save their exception; thereupon, as the record recites, one of appellant's counsel said: ."We want the record to show that Mr. Enoch Fuller, the clerk of the Monroe Circuit Court, at the request of counsel for the defendant, hands to the witness the ballots purporting to be the ballots of Benton township, Monroe county, and the same ballots testified to by the witnesses Browning and Fuller; and counsel asks the witness to examine the ballots, which he now

does, and the defendant offers to prove by the witness that he can, by certain indications that he will be able to give, and distinguishing marks to which he will be able to testify, depose that nine of the ballots that he, the witness, now selects, were not taken out of the ballot-box in counting the votes at the last election in Benton township, were not found in the ballot-box, were not counted by the election officers, were not placed upon the string, were not put in the election-pouch, were not counted, and were not returned to the county clerk's office."

In various other forms evidence was offered tending to prove a wrongful interference with the election papers and a wrongful change of ballots.

We think this evidence was competent. The ultimate question for decision in such cases as this is, who received the highest number of legal votes? *Dobyns* v. *Weadon*, 50 Ind. 298; *Hadley* v. *Gutridge*, 58 Ind. 302; *State, ex rel.,* v. *Shay*, 101 Ind. 36.

It is the eligible candidate who receives the highest number of the votes of the qualified electors that is entitled to the office. McCrary Law of Elections, sections 219, 221. It was, therefore, competent for the appellant to reduce the number of votes credited to the appellee by showing, if he could, that such votes were illegal, or by showing that, by changing the ballots, or by wrongfully interfering with the election papers, a greater number of votes were credited to him than he was entitled to under the law.

Notwithstanding the fact that illegal votes may have been cast for the appellant, or corrupt practices have resulted in benefit to him, still, if these illegal votes or improper practices resulted in benefit to his opponent, the appellant had a right, if he could, to establish these illegal acts by competent witnesses. If, on a just count of all the legal votes, the appellant was entitled to the office, he could not be deprived of it because some illegal votes were cast for him, or some wrongs perpetrated by others in his behalf. If there was fraud on the part of the election officers, resulting in injury to the ap-

pellant, he had a right to show it by direct or indirect evidence. *Wheat* v. *Ragsdale*, 27 Ind. 191.

We do not doubt that the ballots are the best evidence when they are the ballots that were actually cast by the electors. *Reynolds* v. *State, ex rel.,* 61 Ind. 392; *Duson* v. *Thompson,* 32 La. Ann. 861; *Hudson* v. *Solomon,* 19 Kans. 177; *Dorey* v. *Lynn,* 31 Kans. 758; *State, ex rel.,* v. *Sutton,* 99 Ind. 300.

But here the question is, were ballots fraudulently put in the box? If the ballots were not those cast by the electors, then they were destitute of validity. Fraud vitiates everything. If, therefore, the ballots counted for the appellee were not those cast by the electors, they were vitiated for all purposes, and that they were vitiated the appellant had a right to show by direct or indirect evidence. He was not restricted to the ballots themselves, but had a right to impeach their validity. Fraud could seldom be proved if the attacking party were held to the written instrument; but he is not so restricted; on the contrary, he may show fraud by extrinsic evidence. On their face ballots are *prima facie* valid if they come from the proper place and the proper custodian, but they may, nevertheless, be attacked on the ground of fraud. In such an attack the assailant encounters the *prima facie* case which confronts him, but he is not barred of a right to make an assault, although in making it he assumes the burden of overthrowing the case the ballots make against him.

We do not, of course, assume that the excluded evidence establishes fraud, for that would be an improper assumption for any court to make upon a question as to the admissibility of evidence; nor, on the other hand, can we assume to decide that it does not tend in that direction. All that it is now proper to do is to decide, as we do, that the evidence offered by the appellant was competent upon that question. It is said by appellee's counsel " that such flimsy evidence is not admissible," but, in saying this, counsel indicate that they mistake the difference between credible and competent

testimony. Evidence may not be entitled to great weight and yet not be incompetent. Here the question is not as to the credibility of the evidence, but as to its competency.

It may be true, as counsel assert, that the evidence is not entitled to credit as against the other evidence, but that does not affect the question of its admissibility, and that is the only question presented by the ruling excluding it. In deciding that testimony is admissible courts do not decide upon its weight. If it is competent it must be admitted. This is a settled rule of law by which we must abide. *Harbor* v. *Morgan*, 4 Ind. 158; *Hall* v. *Henline*, 9 Ind. 256; *Nave* v. *Flack*, 90 Ind. 205 (46 Am. R. 205); *Boots* v. *Canine*, 94 Ind. 408; *Lanman* v. *Crooker*, 97 Ind. 163, 168 (49 Am. R. 437); *Union M. L. Ins. Co.* v. *Buchanan*, 100 Ind. 63; *Grand Rapids, etc., R. R. Co.* v. *Diller*, 110 Ind. 223.

In excluding the evidence to which we have referred the court erred.

The appellee contends that the evidence is not all in the record, and in this he is supported by the cases of *Fahlor* v. *State*, 108 Ind. 387, and *Lyon* v. *Davis*, 111 Ind. 384. But there is such evidence in the record and the rulings are so presented as that it is our duty to decide the questions made on the rulings excluding the evidence offered by the appellant. *Sutherland* v. *Hankins*, 56 Ind. 343; *Johnson* v. *Wiley*, 74 Ind. 233; *Shorb* v. *Kinzie*, 80 Ind. 500; *Shimer* v. *Butler University*, 87 Ind. 218 (220); *Pavey* v. *Wintrode*, 87 Ind. 379; *Conden* v. *Morningstar*, 94 Ind. 150; *Hedrick* v. *D. M. Osborne & Co.*, 99 Ind. 143.

Judgment reversed, with instructions to award a new trial.

Filed Nov. 3, 1887; petition for a rehearing dismissed Jan. 21, 1888.