In the Matter of Peter J. Garvey.— Order affirmed, with costs on opinion in *The Matter of Goodman* (84 Hun, 53). | 84 611 | 147a 117

*Statement of facts.* — Appeal from an order of the Special Term striking the names of the appellants from the registry of voters of the second election district in the thirteenth Assembly district of the city of New York. Henry Meiser is twenty-seven years of age and was born at Wappinger's Falls, N. Y., where he resided with his parents until he reached the age of fourteen, when he left home and attended a school in New Hampshire and a college in Massachusetts. His father died in 1881; his mother now resides in Philadelphia, Penn. In 1887, when twenty years of age, he went south as an engineer, and in 1888, when twenty-one years of age, he returned to this State, residing at Buffalo, where he lived upon the income of his property and the results of his labor until October, 1889, when he came to this city and became the secretary of the Microphone Carbon Battery Company at No. 112 Liberty street and established his residence at No. 28 West Twelfth street — a boarding house. September 15, 1890, he removed to No. 64 Clinton place, where he took an apartment for himself and sister, and resided there until September, 1891. He registered

and voted in November, 1890, as a resident of No. 64 Clinton place, and his name is in the city directory for that year. From September, 1891, to March, 1892, he was temporarily at Milford, Conn., as purchasing agent for the National Electrical Manufacturing Company, but did not become a resident of that State. From March, 1892, to November, 1892, he resided at No. 55 West Thirty-first street — a boarding house — and was employed as a clerk for a firm doing business at the corner of Tenth avenue and Thirty-seventh street. In 1892 he voted as a resident of No. 55 West Thirty-first street and was placed on the list of persons qualified to perform jury duty and summoned to perform such duty. From November, 1892, to May, 1893, he resided at No. 52 West Twenty-first street — a boarding house. The summer of 1893 he spent on Long Island. In September, 1893, he began the study of theology at the General Theological Seminary of the Protestant Episcopal church at No. 175 Ninth avenue in the city of New York and which is in the second election district of the thirteenth Assembly district of said city. He took up his residence at one of the buildings belonging to said institution which is known as No. 6 Chelsea Square and, also, as No. 175 Ninth avenue In the year 1893 he voted as a resident of this place. He supports himself and pays all his own expenses, and since 1889, the year after he became twenty-one, he has continually resided in this city, having no home elsewhere. He swears that he intends permanently to reside in this State. George Gunnell, Jr., became twenty-one years of age in 1889; his father's home is in Pennsylvania In 1891 he settled at the town of Sodus Centre, N. Y., where he was engaged as a lay reader until September, 1891. In 1891 and 1892 he was a student at Harvard University, Mass., retaining his residence at Sodus Centre. In September, 1892, he became a student of the General Theological Seminary and has rooms in that institution. He is also engaged in business in this city as a bookseller with a partner under the firm name of Gunnell & Collins. He is also a lay reader in the Church of the Heavenly Rest. He receives no support from his parents, but supports himself. In 1893 he registered as a resident of No. 175 Ninth avenue and voted at the general election. He testified that he had been a citizen and resident of this State continuously since 1889 and a resident of the second election district in the thirteenth Assembly district continuously for the past two years and that he intends to make this city his fixed and permanent home. John Neilson Barry was born in the State of Virginia, where his parents now reside, and which State he left in 1892 and came to New York with the intent to make that city his permanent place of residence. He became a student at said seminary and took up his abode there. At the time this application was made he was a lay reader in a church at White Plains. He receives no support from his family, but supports himself by his own exertions. He states in his affidavit that his intention is to make New York city his permanent home, and that his residence therein is not conditioned upon or limited to the seminary course which he is pursuing. On November 19, 1892, he declared in a letter addressed to the Right Reverend Henry C. Potter, Bishop of New York, that his legal residence was in this city. On the same date he wrote the registrar of Warrenton, Va., that he had changed his residence to this city and directed him to strike his name from the list of registered voters of Fauquier county, Va. Since that date he has had no home other than the one established in this city. Thomas Henry Yardley is twenty-five years of age, and was born at Middletown, Conn. His father died in 1882, and his mother is a resident of Rhode Island, with whom he has not resided since 1888; from that year until 1892 he was a college student in Connecticut and in Massachusetts. In the autumn of 1892 he became a student at said seminary, abiding at No. 175 Ninth avenue, since which time he has continued to be a student thereat, and is also employed as a teacher. He supports himself by his own labor and by the income from his property. He does not live with his mother or return to her residence during vacation, and does not consider Rhode Island as his home. He swears that he never intends to reside in that State but intends permanently to reside in this State.

FOLLETT, J. (dissenting): The solution of the question involved in this litigation depends on the construction of the 1st and 3d sections of article 2 of the Constitution of this State, as they stood prior to the Constitution adopted at the general election in 1894. "Section 1. Every male citizen of the age of twenty-one years who shall have been a citizen for ten days and an inhabitant of this State one year next preceding an election and for the last four months a resident of the county and for the last thirty days a resident of the election district in which he may offer his vote, shall be entitled to vote at such election in the election district of which he shall at the time be a resident, and not elsewhere." By the Constitution of 1894, ninety days was substituted for ten days in the second line, otherwise the section was not changed. "Section 3. For the purpose of voting, no person shall be deemed to have gained or lost a residence by reason of his presence or absence while employed in the service of the United States or while engaged in the navigation of the waters of this State, or of the United States, or of the high seas; nor while a student of any seminary of learning; nor while kept at any almshouse or other asylum at public expense; nor while confined in any public prison." By the Constitution adopted in 1894, the last two lines of this section were amended so as to read as follows, the italicised words being added: "Nor while kept at any almshouse or other asylum *or institution wholly or partly supported at public expense or by charity,* nor while confined in any public prison." Section 3, so far as it is applicable to the case at bar, provides: "Section 3. For the purpose of voting no person shall be deemed to have gained or lost a residence by reason of his presence or absence * * * while a student of any seminary of learning." This section relates to persons having a residence at some other place than that in which the seminary is situated at the time they become students therein, but it has no application to persons who were residents of the city or town where the seminary is situated before or at the time they became students thereof. Henry Meiser is not within the section. He became a resident of this city in October, 1889, and was continuously employed therein as secretary, clerk and agent until 1893, when he became a student at this seminary. For four years before he became a student he was a resident of this city and of no other place. Whether his last residence, No. 52 West Twenty-first street, is in the same election district as No. 175 Ninth avenue does not affirmatively appear. But if they are in different election districts it does not affect the question. It was not intended by this section to provide that in case a person who was, and for a long time had been, a resident of one election district, should become a student in a seminary in the same town or city, that a

change of place of abode to another election district should deprive him of a right to vote. Such a narrow and technical construction is repugnant to common sense. The mere fact that a person is a student in, and lives at, a seminary, does not disqualify him from being or becoming an elector, provided he is a resident of the election district, independently of his connection with the institution as a student. Whether he lives at the seminary or at a private house in the same election district is immaterial. The effect of the section is (1) that a person having a residence shall not lose it by reason of absence therefrom while a student in a seminary of learning situated in some other State or county; (2) that a person shall not gain a residence in the place where a seminary of learning' is situated by reason of his presence thereat as a student. Does it deny to a person having a residence at some place other than the one where the institution is situated, the right to change his residence while a student thereat and to acquire a voting residence at the place where the seminary is situated? The Constitution does not say that a person who had another residence when he became a student may not acquire a new one at the place where the seminary is situated while he is a student therein. It simply provides that he shall not be deemed to have gained a residence at the place where the seminary is situated *by reason* of being a student. In case other reasons, facts and circumstances exist by which he becomes a legal resident of the place where the seminary is situated, he becomes entitled to vote at that place. The 3d section first became a law of this State in 1842. (§ 21, art. 4, chap. 130, Laws 1842.) Section 21, slightly changed, was carried into the Constitution of 1846, and was left unchanged by the amendments proposed by the Convention of 1868, and ratified by the People in 1869. In the Convention of 1868 it was proposed to omit the words "nor while a student of any seminary of learning." On a motion made to continue the provision a debate arose (Vol. 1, Proc. & Debates, 568, 569) in which it was said in part: "Mr. Andrews — I am in favor of the restoration of this clause, and I do not think the suggestion of the gentleman from Westchester (Mr. Greeley) is well founded, because, in the case which he last supposes, if a student had no other residence than where he is attending college, and if the intention was with him to remain in that place although he might be a student there, he would have a right notwithstanding the insertion of this clause to vote there. Mr. Merrill — Does the gentleman understand that by the provision of the present Constitution, a man may gain a residence by being a student in college? Mr. Andrews — Oh, unquestionably. It simply determines that while a young man is at school, the fact of his being at school shall not affect the question of his residence. That, as I understand it, is the entire scope of the section. Now, striking out this section is not objectionable on the ground taken as I understand it, in the minority report, because if struck out then it would not allow students temporarily away from home at school to vote in the place where they might happen to be; but I agree with the gentleman from Albany (Mr. Harris) that this has furnished heretofore the rule in such cases, and it had better not be abandoned, although I do not suppose it protects any substantial right whether it is in or out." The position taken by Delegate Andrews, now the Chief Judge of the Court of Appeals, was not controverted by any member of the Convention. The construction of the provision contended for by the learned counsel for the respondent would deny the elective franchise to a person of full age, having a family and

·property, who should while a student at a seminary remove with his family and all of his property to the place where the seminary was situated with the intention of abandoning his former residence and permanently making his home in the place where the seminary was situated. The position taken by Chief Judge Andrews is supported by the reported decisions in this and other States. In *Matter of Ward* (48 N. Y. St. Repr. 613; S. C., 20 N. Y. Supp. 606; 29 Abb. N. C. 187) it was held that persons in attendance as students at the St. Lawrence University in the town of Canton could acquire, under this section, while students, a legal residence at that place and become entitled to vote thereat. *Silvey* v. *Lindsay* (107 N. Y. 55) does not support the contention of the respondent. In 1880 Silvey was a resident of New York city, and in that year was admitted to the Soldiers' Home at Bath, where he remained until February 9, 1886, when he offered to vote at a town meeting held there on that day. He was challenged and sworn and testified: "I answer that I reside in the town of Bath, for the reason that I was admitted an inmate of the New York Soldiers and Sailors' Home in this town by the authorities thereof in the year 1880, and have remained such inmate from that time to the present, with the intention at all times of making my residence in said institution, so long as I shall be permitted to remain such inmate. At the time of my admission to said institution I was an honorably discharged soldier of the United States and a resident and voter of the city of New York. I, therefore, answer that I am a resident of the town of Bath. In becoming an inmate of such institution, I intended to change my residence from the city of New York to the fifth election district of said town of Bath." Silvey went to Bath for the sole purpose of becoming an inmate of the Soldiers' Home, and he remained there for that purpose and intended to remain only so long as he was permitted to remain therein. It was admitted that there was no other reason for his presence in Bath except for the purpose of being an inmate in that asylum. It was said: "He could not gain a residence by being an inmate, which means nothing more than his presence in the home; and excluding that, there is nothing in the case to show that a residence in Bath had been acquired. * * * The provision (Art. 2, § 3) disqualifies no one; confers no right upon any one. It simply · eliminates from those circumstances the fact of presence in the institution named or included within its terms. It settles the law as to the effect of such presence, and as to which there had before been a difference of opinion, and declares that it does not constitute a test of a right to vote and is not to be so regarded. The person offering to vote must find the requisite qualifications elsewhere." This is not only not an authority for the respondent but directly supports the contention of appellants and is in harmony with the cases in other States hereinafter cited. A person of full age and not under legal restraint has under the laws of this State the absolute legal right to change his residence or domicile when and to what place he will. The mere fact that a man of full age is a student, is in the service of the United States, is engaged in navigating the waters of the United States, or of this State, or of the high seas, does not prevent him from acquiring a new domicile while so engaged, and in either case if he does change he becomes entitled to vote at his new domicile. Suppose a resident of Queens county should be appointed United States district attorney for the eastern district of New York and enter on the discharge of his duties, could he not remove to Kings county and

there establish his domicile while in the service of the United States and thus become a voter in that county? Must a man engaged in navigating the waters of this State, its canals, lakes or rivers, abandon his business and remain idle—and, if so, how long—or engage in another business in order to effect a change of domicile so as to become entitled to vote? Can not a resident of New York city engaged in navigating the waters of the United States or the high seas, while so engaged, remove to Brooklyn and establish his domicile there and become a legal voter without ceasing to be a navigator? To ask these questions is to answer them. It will be observed that persons employed in the service of the United States, persons engaged in navigating the waters of this State or of the United States, or the high seas, and seminary students, stand on the same footing under the section of the Constitution. The statements contained in the affidavits of the appellants are not controverted and they disclose every essential fact necessary to exist to acquire and establish a legal domicile in the election district wherein they were registered. Not any one of them had a home, abiding place or residence other than that established in the city of New York, and every one of them had done everything a person could do to abandon his former residence. Had any one of them died intestate, leaving an estate, it would have passed under the laws of this State and would have been administered in the Surrogate's Court of the county of New York. A will executed by any one of them according to the laws of this State would have disposed of his personalty wherever situated, and his estate, whether passing by will or by the statute, would have been subject to the succession taxes imposed by the statutes of this State on the estates of decedents. Every one of them is liable to taxation on his property in the city of New York and liable to military duty under the laws of this State, unless within some statutory exception. Meiser has been domiciled and employed in this State since 1889 and had voted here. Gunnell has been a resident of this State and of this city since 1891 and is actually engaged in business in this city under the firm name of Gunnell & Collins and is employed as a lay reader in a church in this city. Barry in 1892 declared in two writings that he had abandoned his former domicile and had become a resident of this city. Yardley became a resident of this city in 1892, is a student and also a teacher here. Every one of the appellants supports himself from his own labor and from the income of his property and derives no income, support or aid from his parents or from any person residing at his former domicile. In short, all of the obligations of citizens of this State rest on the appellants, and no warrant can be found in the Constitution or laws of this State for denying them all of the privileges of citizenship. Section 4 of article 2 of the Constitution of California is an exact copy of the 3d section of article 2 of the Constitution of this State. In *The People ex rel. Orman* v. *Riley* (15 Cal. 48) the right of forty-five soldiers of the United States army to vote in the county of Del Norte arose. In the District Court it was held that they were not legal voters, but on an appeal to the Supreme Court the judgment was reversed. The court was then composed of Stephen J. Field, chief justice, and Joseph G. Baldwin and W. W. Cope, associate justices. In discussing the question the court said: "The *mere fact* that the men voting were soldiers of the United States army did not disqualify

them from voting. But they were not entitled to vote unless citizens of this State and of the county for the required period before the election; and a mere residence or sojourn in the county in this capacity does not make them citizens or prove them to be such. The rule, as fixed by the Constitution, is that the fact of such sojourn or residence as soldiers neither creates nor destroys citizenship, leaving the political *status* of the soldier where it was before." In *The People ex rel. Budd* v. *Holden* (28 Cal. 124) the right of three persons who removed to Mendocino county while in the service of the United States, to vote in that county, arose, and it was held they were so entitled; among other things, the court said: "Nor did it (being in the service of the United States) preclude them from acquiring a residence in Mendocino, if disposed to do so. That it was their intention to acquire a domicile in Mendocino county sufficiently appears from the evidence. Such being the case, there is nothing in the constitutional provision in question (which is merely declaratory of the common law) which stands in the way of their doing so." In *Devlin* v. *Anderson* (38 Cal. 92) the right of a soldier in the United States army to vote arose. It was held that the mere presence as a soldier of the United States in a county, and nothing more, did not establish a residence, and that he had no right to vote. The previous cases were referred to and approved. It seems to us that these authorities correctly construe the constitutional provision. The mere fact that a person, previously a non-resident, comes into a town as a soldier or as a student, does not make him a legal resident of that place; neither does it prohibit him from acquiring a residence at that place while a student or soldier. The Constitution of Maine provides: "Nor shall the residence of a student at any seminary of learning entitle him to the right of suffrage in the town or plantation where such seminary is established." (Art. 2, § 1, Const. 1820.) In *Sanders* v. *Getchell* (76 Maine, 158) the question of the right of a person who left Foxboro and went to Waterville to become a student in Colby University, arose in an action brought by the student against the selectmen for refusing to register him and permit him to vote. A judgment was ordered for the plaintiff. In discussing the question it was said: "Another question is to be considered and that is, under what circumstances does a student at a seminary of learning acquire a voting residence in the place where such seminary is situated. The constitutional interdiction is in these terms: 'The residence of a student at any seminary of learning shall not entitle him to the right of suffrage in the town where such seminary is situated.' It is clear enough that residing in a place merely as a student does not confer the franchise. Still, a student may obtain a voting residence, if other conditions exist sufficient to create it. Bodily presence in a place, coupled with an intention to make such place a home, will establish a domicile or residence. But the intention to remain only so long as a student, or only because a student, is not sufficient. The intention must be not to make the place a home temporarily, not a mere student's home, a home while a student, but to make an actual, real, permanent home there; such a real and permanent home there as he might have elsewhere. The intention must not be conditioned upon or limited to the duration of the academical course. To constitute a permanent residence the intention must be to remain for an indefinite period, regardless of the length of time the student expects to remain at the college. He gets no residence because a student, but being a student does

not prevent his getting a residence otherwise. The presumption is against a student's right to vote, if he come to college from out of town. Calling it his residence does not make it so. He may have no right to so regard it. Believing the place to be his home is not enough. There may be no foundation for the belief. Swearing that it is his home must not be regarded as sufficient, if the facts are averse to it. Deception or misconstruction should not be encouraged. The constitutional provision should be respected."

The 4th section of article 2 of the Constitution of Oregon provides: "For the purpose of voting, no person shall be deemed to have gained or lost a residence by reason of his presence or absence while employed in the service of the United States, or of this State; nor while engaged in the navigation of the waters of this State or of the United States, or on the high seas; nor while a student of any seminary of learning; nor while kept at any almshouse or other asylum at public expense; nor while confined in any public prison." In *Wood* v. *Fitzgerald* (3 Oreg. 568), and *Darragh* v. *Bird* (Id. 229) the right of two persons to vote who were in the service of the United States arose. One while a deputy assessor and collector of internal revenue removed from Portland to Wasco county; the other came into the county while a private in the United States army, and when his term of service expired he was immediately employed by the United States government to take charge of an abandoned military post. It is sufficient to say without quoting from the judgments that it was held that they might acquire a legal residence under the section of the Constitution while in the service of the United States, and that both were legal voters. The 3d section of the 5th article of the Constitution of Kansas provides: "For the purpose of voting, no person shall be deemed to have gained or lost a residence by reason of his presence or absence while employed in the service of the United States. * * *" In *Hunt* v. *Richards* (4 Kans. 549) a person came into the State while serving as an officer in the army of the United States, and it was held that, for the purpose of voting, he could acquire a residence in that State while so serving. It has been twice held in Massachusetts that a person while a student at a

college may acquire a legal residence in the town wherein the college is situated, and becomes a legal voter therein. (*Putnam* v. *Johnson*, 10 Mass. 488; Opinion of Justices, 5 Met. 587.) In *Pedigo* v. *Grimes* (113 Ind. 148) it was held: "It can, we conceive, make no difference that the person is a student if he has in good faith elected to make the place where the college is located his residence, since there is no imaginable reason why a person may not be both a student at a college and a resident of the place where the college is situated. If he is at the place merely as a student then he is not a resident; but if he has selected that place as his abode, he acquires a residence which entitles him to vote, if he possesses the other qualifications." In *Fry's Election Case* (71 Penn. St. 302) it was held that certain students were not legal voters, it being "admitted that the said voters are students at Muhlenberg College, an institution of learning located in said ward; that they are citizens of the State of Pennsylvania; that they claimed that their residence was in said college, where they have lived from one to three years; that they came to Allentown from other counties for no other purpose than to receive a collegiate education, but intended to leave after graduating; that they were assessed and paid taxes before said election." (See, also, McCrary on Elections, § 41; Paine on Elections, § 69 *et seq.*, and the Contested Congressional Cases therein referred to.) It was not intended that students and persons in the service of the United States should be unable to acquire another residence, but it was intended that the mere fact of being a student, or the mere fact of being in the service of the United States at a particular place for the required time to gain a residence, should not of itself effect a change of residence for the purpose of voting. The order appealed from should be reversed, with costs.