[No. 1871, June 13, 1916.]
KLUTTS et al. v. JONES et al.

SYLLABUS BY THE COURT.

"Residence" is largely a question of intention. Hence, where an unmarried woman, over 21 years of age, who is dependent upon her own earnings for her support, accepts

employment in the public schools of a given town and takes up her residence therein, with the intention of remaining there and making such town her home so long as she receives employment there, or until she has an opportunity to better her condition in life by accepting a more lucrative position in some other place, she is a resident of such town or voting precinct in which she lives, and, other requirements of the law not prohibiting, she is entitled to vote at an election in such district to determine whether bonds shall be voted for a school building.

Appeal from District Court, Roosevelt County; John T. McClure, Judge.

Action by William D. Klutts and others against Moses B. Jones and others. From judgment for defendants, plaintiffs appeal. Affirmed.

See, also, 20 N. M. 230, 148 Pac. 494.

GEORGE L. REESE of Portales, for appellants.

Residence is synonymous with domicile and sec. 11 of art. 9, State Const., contemplates that elector must have had his home in New Mexico 12 months, in the county ninety days and the precinct 40 days immediately prior to election.

14 Cyc. 835, note 19, L. R. A. (N. S.) 759; 9 R. C. L. (Elections), sec. 46, p. 1030; State v. Savre, 113 Am. St. Rep. 452; Berry v. Hull, 6 N. M. 643.

Mae Culberson was not an "elector" at the time she voted.

Desmare v. United States, 93 U. S. 605, 23 L. Ed. 959; State v. Savre, 113 Am. St. Rep. 452; 9 R. C. L. p. 554; Mitchell v. United States, 21 Wall. 350, 22 L. Ed. 584; Andrae v. Andrae, 128 Pac. 813; Easterly, v. Goodwin, 95 Am. Dec. 237; Hewes v. Baxter, 36 L. R. A. 531; Farrow v. Farrow, 143 N. W. 856; 14 Cyc. 833; 9 R. C. L. (Elections), sec. 46, p. 1030; 14 Cyc. 841 842; Holt v. Hendee, 21 Am. Cas. 202; Dow v. Gould & Curry, S. M. Co., 31 Cal. 629; note, 48 Am. St. Rep. 714;

White v. Tennant, 13 Am. St. Rep. 896; Inhabitants of Warren v. Inhabitants of Thompson, 69 Am. Dec. 69; Viles v. City of Waltham, 34 Am. St. Rep. 311; Hairston v. Hairston, 61 Am. Dec. 530; Fry's Election Case, 10 Am. Rep. 698.

JAMES A. HALL of Portales, for appellees.

For things to be considered in determining domicile, see:

2 Kent, 535; 113 N. Y. 582; McCrary Elect. sec. 62; Berry v. Hull, 30 Pac. 946, 6 N. M. 678; 14 Cyc. 841; 15 Cyc. 291; Price v. Price, 27 Atl. 291; 14 Cyc. 839.

## OPINION OF THE COURT.

ROBERTS, C. J.—On April 6, 1914, an election was held in school district No. 30, Roosevelt county, N. M., to determine whether the bonds of said district in the sum of $5,000 should be issued for the purpose of building a schoolhouse in said district. In the election 59 votes were cast and counted for the issuance of the bonds, and 58 votes were cast and counted against the issuance of the bonds. The appellants, among other things, in their second amended complaint, alleged that one vote cast and counted in said election for the issuance of the bonds, to wit, the vote of Willie Mae Culberson, now Elliott, was illegal, in that the said Willie Mae Culberson was not a resident of the said school district, and was not a qualified voter at said election; that on account of said illegal vote the majority of the qualified electors and voters of said district did not vote for the issuance of the bonds of said district; that the result of the election as declared by the directors of said district was erroneous and illegal; and prayed that the defendant treasurer of Roosevelt county be enjoined from negotiating and selling the bonds issued by the directors upon said election, and that the bonds be declared void and canceled. The appellees denied that the said vote of Willie Mae Culberson was illegal, and contended that she was a resident of said district at the time of said election, and entitled to vote therein. This issue was tried before Hon. John T. McClure, Dis-

trict Judge, sitting within and for Roosevelt county, on the 23d day of June, 1915, and resulted in a finding and judgment for the defendants. From the judgment of the district court the appellants have prosecuted this appeal.

The only question of inquiry on the appeal is whether or not the vote of Willie Mae Culberson was illegal. The sole question to be determined by this appeal is as to whether there is substantial evidence to support the finding of the trial court that Willie Mae Culberson, now Elliott, was, at the time of such election, a qualified elector of the Taiban voting precinct. In the case of Klutts et al. v. Jones et al., 20 N. M. 230, 148 Pac. 494, the question of the right of women, possessing the qualifications required by section 1, art. 7, of the Constitution, to vote at elections held for the purpose of voting bonds for the construction of a school building was resolved in the affirmative. The question here for determination is, Had Willie Mae Culberson "resided" within the Taiban voting precinct 30 days prior to this election, for it is conceded that she had resided within the state for 1 year and within the county of Roosevelt 90 days, as required by section 1, art. 7, of the Constitution. The evidence shows that she was more than 21 years of age in September, 1913, at which time she signed a contract with the directors of such school district to teach the Taiban school for the term beginning in September, 1913; that she had, for 4 years prior thereto, attended the Normal University at Las Vegas, N. M., her tuition and board having been provided for by her parents. She says that when she contracted to teach at the Taiban school, she took up her residence at Taiban, intending to make that place her permanent home, so long as she was there employed. When she went to Taiban she took all of her personal belongings with her, and says that she did not expect to call upon her parents for further financial assistance. In other words, she intended to make her own living, and did not expect to contribute toward the support of her father's family or to receive aid from them. She became ill with typhoid fever shortly after she went to Taiban,

and was taken to Portales by her mother while uncon-
scious, and was there cared for until she recovered, which
was apparently some time in November. While she was
in Portales an election was held for the purpose of locat-
ing a county high school, in which both Portales and Tai-
ban were seeking to secure such school. She worked at
the polls during the day for the location of said school
at Taiban, but did not vote, although asked to do so,
because, she stated, that her residence was in Taiban and
she had no right to vote in Portales. In the summer of
1914 she visited her parents in Portales for a week or so,
and then went to Las Vegas to attend the summer nor-
mal, returning to Taiban in August or September and
teaching school there the following term. She was mar-
ried in Taiban, at her home there, to a Mr. Elliott, and
after her marriage she went with her husband to his home
in Chaves county. The above afforded substantial evi-
dence of the fact that the voter in question was legally
entitled to vote at such election, and the finding of the
trial court in this regard will not be disturbed here.

Appellant argues that, because the witness testified that
she did not intend to remain in Taiban should she find
a situation in some other place that suited her better, or
should she fail to secure employment in the schools at
that place, she was not a resident of such voting precinct
within the meaning of the Constitution. This is the ex-
treme view, which finds some support in the earlier cases.
In the case of Berry v. Wilcox, 44 Neb. 82, 62 N. W.
249, 48 Am. St. Rep. 706, the court says:

"The older cases and some of the modern ones require as
an essential element the animus manendi, and construe this
term as meaning an intention of always remaining."

In this case, the question was as to whether or not a
student at an institution of learning was a resident of
the town in which such institution was located, and en-
titled to vote at elections held there. The opinion is so
instructive upon the point here raised that we quote at
length therefrom:

"That what place is any one's domicile is a question of
fact; that if a student have a father living; if he remain a

Klutts v. Jones, 21 N. M. 720.

member of his father's family; if he return to pass his vacations; if he be maintained by his father—these are strong circumstances repelling a presumption of change of domicile. But if he be separated from his father's family, not maintained by him; if he remove to a college town and take up his abode there without intending to return to his former domicile—these are circumstances more or less conclusive to show the acquisition of a domicile in the town where the college is situated. The same view was taken in Sanders v. Betchell, 76 Me. 158, 49 Am. Rep. 606. The Supreme Court of Ohio, quoting Story's definition of 'Domicile,' adds: 'It is not, however, necessary that he should intend to remain there for all time. If he lives in a place with the intention of remaining for an indefinite period of time as a place of fixed present domicile, and not as a place of temporary establishment, or for mere transient purposes, it is, to all intents and for all purposes, his residence.' Sturgeon v. Korte, 34 Ohio St. 525.

"In Dale v. Irwin, 78 Ill. 170, the court said: 'What is "a permanent abode?" Must it be held to be an abode which the party does not intend to abandon at any future time? This, it seems to us, would be a definition too stringent for a country whose people and characteristics are ever on the change. No man in active life in this state can say, 'wherever he may be placed, This is and ever shall be my permanent above. It would be safe to say a permanent abode, in the sense of the statute, means nothing more, than a domicile, a home, which the party is at liberty to leave, as interest or whim may dictate, but without any present intention to change it.'

"These authorities, we think, present the law in its true aspect. The fact that one is a student in a university does not of itself entitle him to vote where the university is situated, nor does it prevent his voting there. He resides where he has his established home, the place where he is habitually present, and to which, when he departs, he intends to return. The fact that he may, at a future time, intend to remove will not necessarily defeat his residence before he actually does remove. It is not necessary that he should have the intention of always remaining, but there must coexist the fact and the intention of making it his present abiding place, and there must be no intention of presently removing."

The case of Pedigo v. Grimes, 113 Ind. 148, 13 N. E. 700, in which Judge Elliott wrote the opinion of the court, is also very instructive. The court says:

"It is said by appellant's counsel that, 'to effect a change of domicile, there must be intention and act united—the fact of residence and the intention of remaining.' In support of this proposition, counsel cite McCrary, Law of Elections, 39, 40; Cooley, Const. Lim. 604; 2 Kent, Com. 431; Astley v.

Capron, 89 Ind. 167; Culbertson v. Board, etc., 52 Ind. 361; McCollem v. White, 23 Ind. 43; Maddox v. State, 32 Ind. 111. The counsel's statement is doubtless an accurate one, but here the intention and the act, as the trial court found, did unite, and we think this finding is fully sustained by the testimony before the court. It is not necessary, however, that there should be an intention to remain permanently at the chosen domicile; it is enough if it is for the time the home of the voter to the exclusion of other places. Judge Cooley says: 'A person's residence is the place of his domicile, or the place where his residence is fixed without any present intention of removing therefrom.' Cooley's Const. Lim. (5th ed.) 754. Judge Story makes substantially the same statement of the rule. Conflict of Laws, § 43.

"In the case of Cessna v. Meyers, reported and strongly approved by Judge McCrary, it was said: 'A man may acquire a domicile, if he be personally present in a place and elect that as his home, even if he never design to remain there always, but design at the end of some short time to remove and acquire another. A clergyman of the Methodist Church who is settled for 2 years may surely make his home for 2 years with his flock, although he means, at the end of that period, to remove and gain another.' McCrary Elections, p. 496; Id. § 38. This principle was applied to the case of a student of Andover College, in Putnam v. Johnson, 10 Mass. 488, where it was said: 'A residence at a college or other seminary, for the purpose of instruction, would not confer a right to vote in the town where such an institution exists, if the student had not severed himself from his father's control, but resorted to his house as a home, and continued under his direction and management. But such residence will give a right to vote to a citizen not under pupilage, notwithstanding it may not be his expectation to remain there forever.' In this instance, the citizens, having taken up a residence in Bloomington and having no other home, were entitled to vote there, although they may not have intended to remain there always. It is frequently said in the books that a man must have a home somewhere, and it is agreed that this home is at the place where he is bodily present with the intention of making it his domicile, although he may have in view a change of residence at some future time. Cooley, Const. Lim. 754; McCrary, Elections, § 39."

These authorities dispose of appellant's contention in this case. Were this not the true rule, many people in this state would be deprived of the right to vote. Take, for example, a railroad employe who is sent by the company from place to place as his services are required, could it be said that he was not entitled to vote in a given place where he was employed, and where he lived, and had

resided for the requisite time, because, perchance, he expected at some future time to be assigned to some other place? Another example is afforded by Methodist ministers, referred to in the excerpt from McCrary on Elections. It is commonly known that they are only assigned to a given charge for a period of 1 year, at the end of which period they may be reassigned to some other charge or returned to the same one. Certainly they can have no present intention of making the place of their assignment their permanent home, but they do intend, as did the witness in this case, to make the place of their work their home until some event transpires which works a change of residence.

The question of whether a person is a resident of one place or another is largely a question of intention, and, where the intention and the acts of the party are in accord with the fact of residence in a given place, there can be no doubt of the fact that such party is a bona fide resident of the place where he intends to and does reside, and that he has the right to exercise all the rights and privileges accorded actual residents of such place, provided he comes within the provisions of the law regulating such rights. Here the voter's intention was to make Taiban her home. She was over 21 years of age, and was making her own way in the world. She had the right to select the place of her choice as her home. Under the law she owed no further duty to her parents, nor they to her. She was free to make her home where she chose, and, having elected to live in Taiban as her home, and claiming none other, she had the right to vote in the election held, because she came within all the other provisions of the law regulating the right to vote.

Counsel for appellant argues that the voter's testimony was overcome by the testimony of the witness Wheeler, who was the railroad ticket agent at Taiban, who testified that upon one occasion, when Miss Culberson had completed a school term at Taiban, she asked for a ticket to Portales, and in reply to an inquiry as to where she was going, replied, "I am going home." · But this proves nothing, for it is very common for men and women, who

have families and have long had an established residence at some other· place, to say they are "going home" when speaking of an intended visit to father and mother, or to the "old home place." Upon the occasion referred to the daughter went to Portales and visited her father and mother for 3 or 4 days, and then went on to Las Vegas, where she attended the normal school during the summer term. After the school term there was completed she again spent a week or so with her parents, and then returned to Taiban, where she resumed her work of teaching.

The evidence in this case amply justified the finding by the trial court that Miss Culberson, now Mrs. Elliott, was a duly qualified voter at such election, and the judgment must be affirmed; and it is so ordered.

HANNA and PARKER, J.J., concur.

### SYLLABUS BY THE COURT.