JAMES SILVEY, Respondent, *v.* WILLIAM W. LINDSAY et al., Appellants.

The Soldiers' Home, incorporated under the act of 1876 (Chap. 270, Laws of 1876), is an "asylum," and its inmates are supported at public expense, within the purview of the provision of the State Constitution (art. 2 § 3), declaring that "for the purpose of voting no person shall be deemed to have gained or lost a residence * * * while kept at any alms-house or other asylum at public expense."

The fact of the presence in that institution of an inmate, therefore, does not constitute a test of his right to vote, and is not to be considered in determining that question; he must find the requisite qualifications elsewhere.

Plaintiff offered to vote at the annual town meeting for the year 1886 in the town of B., wherein said institution is located. On being challenged, plaintiff stated in substance, that he resided in the town of B., for the reason that he was admitted an inmate of said Home in 1880 and had remained an inmate since that time, with the intention at all times of making his residence in said institution so long as he should be permitted to remain; that at the time of such admission he was an honorably discharged soldier and a resident and voter in the city of New York; that, therefore, he was a resident of the town, and that in becoming an inmate he intended to change his residence from said city to said town. *Held*, that plaintiff was not entitled to vote; that his narration of an intention to change his residence and his assertion that he was a resident of the town could be accepted only as his conclusions from the circumstances

detailed; that the town officers presiding at such election were not bound by them, but by the facts, and so were justified in rejecting the vote.

*It seems* that one duly qualified to vote, as provided by the Constitution (art. 2 § 1), cannot be deprived of that right by any inferior tribunal; the officers presiding at an election determine the question at their peril, and are liable to him in damages, in case of an erroneous determination that he is disqualified, and a rejection of his vote.

*Silvey* v. *Lindsay* (42 Hun, 116) reversed.

(Argued June 29, 1887; decided October 4, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 22, 1886, which directed judgment in favor of plaintiff upon a case submitted under the Code of Civil Procedure (§ 1279, *et seq*). (Reported below, 42 Hun, 116.)

From the agreed case it appeared that on the 9th day of February, 1886, the plaintiff was, and since 1880, had been an inmate of the Soldiers' Home, an institution duly incorporated (Laws of 1876, Chap. 270), and situated in the fifth election district of the town of Bath, Steuben county. The expenses of the institution and the support of its inmates are paid by the State out of annual appropriations made by the legislature.

On the said 9th day of February, 1886, the annual town meeting for the town of Bath was duly held at the court house, in said town, for the election of a supervisor and other town officers. The defendants were the justices of the peace of said town, and as such were present and presided at such town meeting and received the votes of all the persons who voted at said town meeting.

The plaintiff offered to vote and, being challenged, made the statement set forth in the opinion. The statement was true and known to be so by the defendants, but they refused to receive his vote, saying: "We decide that you are not a legal voter here, for the reason that on the facts stated, you are not a resident of the town of Bath."

The question submitted to the court was: "Did James Silvey (the plaintiff), gain a residence in the town of Bath, so as to entitle him to vote at said town meeting by reason of his presence as an inmate of said institution?"

It was agreed that, in case the question was answered in the affirmative, judgment should be rendered in favor of plaintiff for fifty dollars damages and costs.

Judgment was rendered accordingly.

Further facts appear in the opinion.

*J. F. Parkhurst* for appellants.    The relator did not gain a residence in Bath while an inmate of the New York State Soldiers and Sailors' Home because that institution is an asylum maintained at public expense, and its inmates are within the provisions of section 3 of article 2 of the Constitution. (*Newell* v. *People*, 7 N. Y. 97, 109 ; *People* v. *Potter*, 47 id. 379 ; Sedg. on Stat. and Const. Law, 242 ; *People* v. *Dayton*, 55 N. Y. 375 ; Smith Com. 512, 634 ; *Prigg* v. *Penn*, 16 Pet. 539 ; *Holmes* v. *Carley*, 31 N. Y. 289 : *People* v. *U. Ins. Co.*, 15 Johns. 358 ; Bac. Abr. Tit. Stat. 1, 5, 10 ; *Jackson* v. *Collins*, 3 Cow. 89 ; *Dresser* v. *Brooks*, 3 Barb. 429 ; *Donaldson* v. *Wood*, 22 Wend. 395 ; Cool. Const. Lim. 54, 55, 64, 66 ; *People* v. *Morrell*, 21 Wend. 584 ; *McKean* v. *Devries*, 3 Barb. 196 ; *People* v. *Blodgett*, 13 Mich. 138 ; *In re Fitzgerald*, 2 Caines, 317 ; *In re Wrigley*, 8 Wend. 41 ; *Frost* v. *Brisbin*, 19 id. 11 ; *Williamson* v. *Parisien*, 1 Johns. Ch. 392 ; *Hegeman* v. *Fox*, 31 Barb. 475 ; *Du Puy* v. *Wurtz*, 53 N. Y. 556 ; Cool. Const. Lim. 598, 599 ; *People* v. *Willson*, 62 N. Y. 186 ; Laws of 1878, chap. 48, § 9 ; Laws of 1865, chap. 587 ; R. S. [Bank's 7th ed.] 1222, § 19, etc.; *Sinks* v. *Reese*, 19 Ohio St. 316 ; *Renner* v. *Bennett*, 21 id. 431 ; *Sturgeon* v. *Korte*, 34 id. 525 ; *People* v. *Holden*, 28 Cal. 123 ; *People* v. *Brady*, 40 id. 198 ; *S. C.*, 6 Am. Rep. 604 ; *Chaine* v. *Willson*, 1 Barb. 673 ; 3 Rawle (Penn.), 312 ; 4 Black. Com. 225 ; 2 Russell on Cr. 28 ; 4 Coke, 440 ; *De Meli* v. *De Meli*, 67 How. Pr. 20 ; *Still* v. *Woodville*, 38 Miss. 646 ; Laws of 1878, chap. 48, § 6 ; *New York* v. *Furze*, 3 Hill, 612 ; *Hudson* v. *New York*, 9 N. Y. 163 ; *Phelps* v. *Hawley*, 52 id. 23 ; *Ryall* v. *Kennedy*, 67 id. 379 ; *Sanders* v. *Getchell*, 76 Mo. 165 ; Cool. Const. Lim. [2d ed.] 601, note ; *People* v. *Riley*, 15 Cal. 48 ; R. S. [Bank's 7th ed.] p. 1858, § 28, etc.)

*M. Rumsey Miller* for respondent. The respondent was a. voter in Bath, unless section 3 of article 2 of the Constitution is prohibitory of the right to vote. (*Roosevelt* v. *Kellogg,* 20 Johns. 211; *Hegeman* v. *Fox,* 31 Barb. 475, 476; *De Puy* v. *Wurtz,* 53 N. Y. 556, 561; *Kennedy* v. *Ryall,* 67 id. 379, 386; *Heidenbach* v. *Schland,* 10 How. Pr. 477; *In re Wrigley,* 8 Wend. 134; Const. of N. Y., art. 2, § 1; 1 R. S. Chap. 11, tit. 2, art. 1, § 1.) Section 3 of article 2 of the Constitution. is not prohibitory of the respondent's right to vote. (Const. art 1, § 1; *People* v. *Holden,* 28 Cal. 123; 5 Metc. 587, 588, 589, 590; *Sanders* v. *Getchell,* 76 Me. 165.) He had aban- doned and lost his residence in New York. (*In re Wrigley,* 8 Wend. 134; *Heidenbach* v. *Schland,* 10 How. Pr. 477.) The defendant was a voter because the "Home" is not an alms- house or asylum within the meaning of section 3, article 2 of the Constitution. (Laws of 1876, chap. 270, §§ 1, 2, 3, 4, 5; Laws of 1878, chap. 48, §§ 1, 3, 4, 6; *Goodale* v. *Lawrence,* 88 N. Y. 517; 3 R. S. [Bank's ed.] 1899, 1904.)

DANFORTH, J. The plaintiff's vote was rejected upon the sole ground that he was not a resident of Bath. That he was by age, sex and citizenship duly qualified to exercise the fran- chise was not denied, but the defendants after hearing his oath and his statement under it, decided that he had not been within the meaning of the law for " thirty days next preceding the election, a resident of the district from which the officers were to be chosen for whom he offered to vote." The right claimed by him involved this inquiry (Cons. of N. Y., Art. 2, § 1), and as to it (his vote being challenged), he said as follows: " I answer that I reside in the town of Bath, for the reason that I was admitted an inmate of the New York Soldiers and Sailors' Home in this town, by the authorities thereof in the year 1880, and have remained such inmate from that time to the present; with the intention at all times of making my resi dence in said institution, so long as I shall be permitted to remain such inmate. At the time of my admission to said institution I was an honorably discharged soldier of the

United States, and a resident and voter of the city of New York; I, therefore, answer that I am a resident of the town of Bath. In becoming an inmate of said institution, I intended to change my residence from the city of New York to the fifth election district of said town of Bath."

It is obvious that his narration of an intention to change his residence to Bath, and his assertion that he resided in Bath, can be accepted only as conclusions from the circumstances detailed in connection with them. They were his conclusions and defendants, in view of his whole statement, were not bound by them. They were bound by the facts stated and were required to say upon those facts whether the plaintiff. was qualified in the necessary particular, and undoubtedly they were to determine the question at their peril. The Constitution in the section referred to (*supra*), specifies the qualifications necessary to the elective franchise, provides who shall have the right to vote, and one duly qualified cannot be deprived of that right by any inferior tribunal. But the Constitution also provides (art 2, § 3): "For the purpose of voting no person shall be deemed to have gained or lost a residence, by reason of his presence or absence, while employed in the service of the United States; nor while engaged in the navigation of the waters of this State, or of the United States, or of the high seas; nor while a student of any seminary of learning, nor while kept at any alms-house, or other asylum at public expense; nor while confined in any public prison," and the decision of the inspectors of election was that in their opinion the intending voter was in Bath as a mere inmate of the institution and for a temporary purpose, and not as a resident of the voting district, or with intent to make the town a fixed or permanent place of residence, and so it would seem. His presence there was eleemosynary in its character; he was there as a dependent, because he had no means of support or relatives to maintain him, and liable to be discharged whenever the board of trustees were satisfied that he was of sufficient ability or means to support himself. (Rules and regulations of the Home.) As to the Home, he was a beneficiary, and

nothing else. As to Bath, his residence was a beneficiary's residence, and no other. His relations were not with the village, but with the institution, which was situated within its borders. His intention to remain was conditioned upon and limited to the duration of the charity which he enjoyed. His intention to remain in Bath depended upon his expectation to remain at the Home. This gave no residence, for he was there only in the character of a beneficiary, for a temporary purpose.

His only intention in going to Bath was to be an inmate of the Home, and it was only as such inmate that his residency was to be continued. He was not there as a citizen changing his residence, but as an object of well bestowed and deserving charity. He was, as is clear upon his statement, present in Bath and at the institution because he was then "kept" (that is, supported) * * * "at public expense." "I reside in Bath," he says, "for the reason that I was admitted to the Home as an inmate." He continues there with the intention of making his residence in the institution, so long, he says, "as I shall be permitted to remain an inmate." These reasons satisfied the conscience of the plaintiff and enabled him to say he was a resident of Bath, but in reality they bring the case within the prohibition of the Constitution. He could not gain a residence by being an inmate, which means nothing more than his presence in the Home; and excluding that there is nothing in the case to show that a residence in Bath had been acquired.

It follows that he has not lost the right to vote in the place of his legal residence — New York, for the provision of the Constitution in question also declares that he shall not lose his residence by reason of such "presence" in the "institution." As to that city he is to be regarded as temporarily absent and his residence as a citizen still therein.

We have no doubt that the institution in question is within the purview of the constitutional provision (art. 2, § 3) above referred to. It is an asylum supported at the public expense, and its members are within the mischief against which that provision is aimed, the participation of an unconcerned body of men in

the control through the ballot-box of municipal affairs in whose further conduct they have no interest, and from the mismanagement of which by the officers their ballots might elect, they sustain no injury. But the question in each case is still as it was before the adoption of the Constitution, one of domicil or residence, to be decided upon all the circumstances of the case. The provision (art. 2, § 3) disqualifies no one; confers no right upon any one. It simply eliminates from those circumstances the fact of presence in the institution named or included within its terms. It settles the law as to the effect of such presence, and as to which there had before been a difference of opinion, and declares that it does not constitute a test of a right to vote, and is not to be so regarded. The person offering to vote must find the requisite qualifications elsewhere.

We think, therefore, the question submitted by the parties, viz., "Did James Silvey gain a residence in the town of Bath so as to entitle him to vote at said town meeting by reason of his presence as an inmate of said institution," should have been answered in the negative, and it is so answered by this court.

It follows that the judgment of the court below should be reversed and judgment ordered for the defendants, with costs of all courts in their favor and against the plaintiff.

All concur.

Judgment accordingly.