In the Matter of the Application of the CITY OF UTICA for the Appointment of Commissioners in Proceedings to Take Lands of the People of the State of New York for Street Purposes.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant; THE CITY OF UTICA, Respondent.

*Eminent domain — exemption of State lands from condemnation by municipalities· for street purposes — prior dedication to a public use — an order appointing commissioners is appealable.*

The State or People are not bound by a statute, unless expressly named, or included in its terms by necessary implication.

Where the Legislature has conferred upon a corporation or municipality the general power to acquire lands by the right of eminent domain, such power does not extend to lands already dedicated by authority of law to a public use, unless such right is expressly conferred by the statute in direct terms or by necessary implication.

The city of Utica cannot, under the general authority conferred upon it by its charter (Laws of 1862, chapter 18, as amended) to acquire land for street purposes by proceedings *in invitum*, condemn land owned by the State of New York, previously dedicated by authority of law to a public use, as, for example, a part of the grounds of the Utica State Hospital, the taking of which for street purposes would be inconsistent with its use for the purposes of the hospital and would absolutely deprive the State of all benefit in and use of the property taken and essentially interfere with the use of the remainder of the land used for those purposes.

An order made in such a proceeding appointing commissioners to appraise the lands so sought to be taken is appealable.

APPEAL by the People of the State of New York from an order of the County Court of Oneida county, entered in the office of the

clerk of that county on the 21st day of May, 1892, appointing commissioners in the above-entitled proceedings.

*S. W. Rosendale, Attorney-General,* and *John D. McMahon, Deputy Attorney-General,* for the appellant.

*Josiah Perry, William Kernan* and *E. D. Mathews,* for the respondent.

MARTIN, J.:

The order from which this appeal was taken was made in a proceeding instituted under the charter of the city of Utica to open a street through the farm or grounds of the Utica State Hospital without the consent of the State or the managers of that institution. The Utica State Hospital and the State Lunatic Asylum at Utica are one and the same institution, the former name having been substituted for the latter. That this institution is a public one, and has been maintained as such by the State for more than a half century, is not only a matter of common knowledge, but may be seen by an examination of the public statutes of the State passed during that time. It is also an established fact that the property through which the city of Utica now seeks to open the street in question has been dedicated to the use of such institution, and has been used for that purpose for many years. That the use to which it has been thus dedicated is a public one cannot be denied. That the property is not only proper but necessary for such public use is equally certain. The question in this case is whether, under such circumstances, the authorities of the city can condemn the State property thus used, or any portion of or interest in it, for the purpose of laying out a public street through it.

If any such authority exists it is given by the provisions of the charter of the city of Utica (Chap. 18, Laws 1862), and subsequent acts amendatory thereof. The charter gives the common council of the city power to lay out, open, make, amend, repair, alter, extend, widen, control and discontinue streets, lanes and highways. In case it shall be necessary to appropriate for any street any real estate not belonging to the city, which the city may not be permitted by the owner freely to appropriate, it prescribes the procedure to be adopted to acquire the right to open or lay out such streets.

It is contended by the appellant that the common council of the
city of Utica possessed no right or power to condemn the property
of the State, especially such as was already dedicated to a public
use, and, therefore, that the proceeding which resulted in the order
appealed from was unauthorized and the order void. Thus, the
question we are called upon to determine relates not to procedure,
but to the right of condemnation alone. It is a question not of dis-
cretion but of power.

At the commencement of this investigation we are met with the
question whether the statute under which this proceeding was
instituted has any application to, or authorizes the condemnation of,
the lands of the State. It seems to have been a well-established
principle of the common law that the Crown was not bound by a
statute, unless named in it, for the reason that the law is presumed
to be made for subjects only, and that at all events the Crown was
not reached except by express words, or by necessary implication,
in any case where it would be ousted of an existing prerogative or
interest. (*Attorney-General* v. *Donaldson*, 10 M. & W. 117, 124;
*Huggins* v. *Bambridge*, Willes, 241, 246; *The King* v. *Wright*,
1 Ad. & E. 434, 437; *Ex parte Russell*, 19 Ves. Jr. 163, 165;
*Ex parte Postmaster-General*, L. R. [10 Ch. Div.] 595, 598; *In re
Henley & Co.*, L. R. [9 Ch. Div.] 469, 481; *Weymouth* v. *Nugent*,
6 B. & S. 22, 33; *In re Cuckfield*, 19 Beav. 153.) The United
States courts also hold that the sovereign power is not bound by
general words in a statute, but only when included expressly or by
necessary implication. (*United States* v. *Hewes*, Crabbe, 307;
*United States* v. *Hoar*, 2 Mason [U. S.], 311; *United States* v.
*Greene*, 4 id. 427, 431; *United States* v. *Herron*, 20 Wall. [87
U. S.] 251.) The same rule has been recognized in many of the
States as applicable to the Commonwealth, its rights and interests.
(*Jones* v. *Tatham*, 20 Penn. St. 398, 411; *Stoughton* v. *Baker*, 4
Mass. 521, 528; *State* v. *Milburn*, 9 Gill [Md.], 105, 117; *Cole* v.
*White County*, 32 Ark. 45, 51; *State* v. *Kinne*, 41 N. H. 238, 240;
*State* v. *Garland*, 7 Ired. [N. C.] 48, 50.)

When we examine the decisions of our own State upon the sub-
ject, we find that the question arose in the case of *People* v. *Gilbert*
(18 Johns. 226), and that it was held that the English common-law
rule that the King is not bound by a statute of limitations, was by

the adoption of the Constitution made the law of this State, and that the State was not included in the general expressions of a statute. In *People* v. *Rossiter* (4 Cow. 143) the English rule was again followed, and it was held that the State was not bound by an insolvent or bankrupt law, unless named in it. The court, in delivering the opinion, said : " The People are not bound by an act of this kind, unless they are named in it. The rule is the same as in England. The King is not bound by a bankrupt law unless named ; and the People are the King for the purposes of this rule." In *People* v. *Herkimer* (4 Cow. 348) it was held that the People have succeeded to the rights of the King, and are not, therefore, bound by general words in a statute when any right or interest might be divested by or taken under it.

It is said to be upon this principle that the grant to a corporation by the Legislature of a general power to take real estate for the purposes of the incorporation does not extend to property already dedicated by authority of law to, and held for, another public use (Enlich on Interp. Stat. § 162), but be that as it may, the rule seems to be firmly established that to take property already appropriated to another public use, the act of the Legislature must show the intent to do so by clear and express terms or by necessary implication, leaving no doubt or uncertainty respecting the intent. (Mills on Em. Dom. § 46, and cases cited in note 1.)

In *Matter of Boston & Albany R. R. Co.* (53 N. Y. 574, 577), where a railroad company sought to condemn land that had been dedicated to the use of a public park, it was said : " The sole question, then, is whether the Legislature has conferred upon the applicant the power to enter upon and take possession of property already held and dedicated by authority of law to one public use, for another and entirely different use also declared to be public." After stating that the authority for the proceeding in that case, if it existed, must be found in the General Railroad Law, the court added : " It (the power) must be expressly conferred, that is, in direct terms or by necessary implication, and the implication does not arise if the powers expressly conferred can, by reasonable intendment, be exercised without the appropriation of property already actually held and used for another public use." In *Matter of City of Buffalo* (68 N. Y. 167) it was again held that while the Legislature might

Fourth Department, November Term, 1893.          [Vol. 73.

interfere with property held by a corporation for one public use and apply it to another, and might delegate the power to do so to another corporation, yet that such delegation must be in express terms or arise from necessary implication. In *Matter of N. Y. C. & H. R. R. R. Co.* (77 N. Y. 256) it is said : " The doctrine that corporations who derive power from the Legislature to take property by the right of eminent domain, cannot exercise such power in reference to property already dedicated to public use, without express grant, cannot be controverted." (See, also, *Matter of Boston, Hoosac Tun. & W. R'way Co.*, 79 N. Y. 68 ; *Suburban R. T. Co.* v. *Mayor, etc., of N. Y.*, 128 id. 510, 521.)

By these authorities two rules are established : (1) That the State or People are not bound by a statute, unless expressly named or included in it by necessary implication ; (2) that where the Legislature has conferred upon a corporation or municipality the general power to acquire lands by the right of eminent domain, it does not apply to lands already dedicated by authority of law to a public use, unless such right is expressly conferred by the statute in direct terms or by necessary implication. Applying those rules to the facts in this case, we are unable to perceive any ground upon which the proceeding which resulted in the order appealed from can be upheld, as there is nothing in the statute under which it was instituted which either expressly or by necessary implication conferred upon the city the power to appropriate the lands of the State for street purposes. As we have already seen, the use to which the grounds around the Utica State Hospital have been dedicated for more than fifty years was a public one, the property thus used was required for the purpose to which it had been dedicated, the use for which it was sought to be condemned was inconsistent with its use for the purposes of the hospital, would absolutely deprive the State of all benefit in and use of the property taken, and essentially interfere with the use of the remainder. Under these circumstances, we are clearly of the opinion that the city of Utica acquired no right or authority under its charter to condemn the lands in question.

It is, however, contended by the respondent that the order of the county judge, appointing commissioners, was not appealable. *The Matter of City of Buffalo* (64 N. Y. 547) seems to be adverse to this contention. There the appeal was from an order of the

General Term of the Superior Court of the city of Buffalo affirming an order of the Special Term appointing commissioners to appraise the lands of the appellants, and the order was held to be appealable. In that case it was said : " If the case presented was not within the law, commissioners could not legally be appointed. Assuming that the court could not review the judgment of the common council as to the necessity for taking the lands, or their discretion in determining upon the plan or extent of the improvement, it had power to inquire and decide whether it could act at all upon the application." We think the doctrine of the case cited is decisive of the question, and that the order was appealable.

Our conclusion is that the order appealed from should be reversed, and the respondent's motion for the appointment of commissioners should have been denied.

HARDIN, P. J., and MERWIN, J., concurred.

Order reversed, with ten dollars costs and disbursements.