(14 Misc. Rep. 213.)
## In re BATTERMAN.

(Supreme Court, Special Term, Albany County. November 1, 1895.)

ELECTIONS—RIGHT TO VOTE—RESIDENCE IN CHARITABLE INSTITUTION.
    Const. 1895, art. 2, § 3, which provides that, "for the purpose of voting, no person shall be deemed to have gained or lost a residence * * * while kept at any * * * asylum or institution, wholly or partly supported * * * by charity," is prospective only, and does not affect the right to vote of any person who acquired a residence in such institution before the constitution was adopted.

At Chambers. Application by John M. Batterman for an order directing the board of registry to place petitioner's name on the registry list of the Second election district in the town of Colonie, in the county of Albany. Granted.

Robert H. McCormack, Jr., for petitioner.
Steadman, Thompson & Andrews, for respondent.

HERRICK, J. The petitioner asks for an order, directed to the board of registry of the Second election district of the town of Colonie, Albany county, directing such board of registry to place his name upon the registry list of said election district. The board of registry has refused to register the petitioner, and bases its refusal upon section 3, art. 2, of the constitution of the state, which reads as follows:

"For the purpose of voting, no person shall be deemed to have gained or lost a residence, by reason of his presence or absence, while employed in the service of the United States; nor while engaged in the navigation of the waters of this state, or of the United States, or of the high seas; nor while a student of any seminary of learning; nor while kept at any alms-house or other asylum, or institution wholly or partly supported at public expense or by charity nor while confined in any public prison."

With great hesitation, I have arrived at the conclusion that the order prayed for should be granted. The petitioner is, and has been since April, 1893, an inmate of what is known as the "Home for Aged Men,"—an institution situate in said Second election district of the town of Colonie. The object of the existence of this institution is stated to be "the relief, care, culture, and support of needy or distressed old men." And it is provided by the by-laws of such institution that "respectable, aged, indigent men, born in the United States of America, may, by vote of the trustees, be placed on the list of beneficiaries, and may be received into the home, and be supported therein by relatives or friends, in whole or in part, or at the sole expense of the society, as the circumstances or necessities of the case may seem to require." And it is further provided that in no case whatever, except by the vote of three-fourths of all the members elected to the board of trustees, shall any one be put on the list of beneficiaries but those who are natives of the United States of America, are at least 60 years of age, and have resided in the county of Albany during the 10 years next preceding their application for relief. And it is further provided by the by-laws that, "as a general rule, those received, who are to be supported entirely by the

society, will be required to pay two hundred and fifty dollars entrance money." The society is supported entirely by private charity, except the entrance fee of $250 above referred to; receiving no assistance from the state or local authorities, except relief from taxation upon its property. The petitioner's entrance fee to the institution was made up from private subscriptions by former business acquaintances. The institution, as I have described it, is one that plainly comes within the provisions of section 3, art. 2, of the constitution; and as to its inmates, at least those who have become such since the 1st of January, 1895 (the time when the present constitution took effect), it must be held that their being domiciled there does not give them a residence within the election district which entitles them to register or vote there. But it is contended upon the behalf of the petitioner that he had acquired a residence in such election district prior to January 1, 1895, and that at that time the constitution made no reference to inmates of institutions like the one in question. Section 3, art. 2, of the constitution then read as follows:

"For the purpose of voting, no person shall be deemed to have gained or lost a residence, by reason of his presence or absence, while employed in the service of the United States; nor while engaged in the navigation of the waters of this state; or of the United States, or of the high seas; nor while a student of any seminary of learning; nor while kept at any alms-house, or other asylum, at public expense; nor while confined in any public prison."

It appears from the papers before me upon this application that the petitioner both registered and voted in this same election district at the election held in November, 1893. There is nothing in the language of section 3, art. 2, of the constitution, as it now exists, which indicates that it was intended to be retroactive. It must therefore be held to be prospective in its operations and effect, and, if a residence had been already acquired in any institution of the kind described in the section, it will not be held to have been taken away by this provision of the constitution. It has been said of this section of the constitution, as it was before the change made in it by the present constitution, that:

"The provision [article 2, § 3] disqualifies no one; confers no right upon any one. It simply eliminates from these circumstances, and affects, persons in the institution named, or included within the terms. It settles the law as to the effect on such persons." Silvey v. Lindsay, 107 N. Y. 55–61, 13 N. E. 444.

That is to say, the presence of one in such an institution, in and of itself, neither gives him a right to vote in the election district where such institution is situated, nor deprives him of his right to vote in the election district where he resided and voted before becoming an inmate of such institution. So, when the new constitution came into force (January 1, 1895), this provision (section 3, art. 2) disqualified no one,—conferred no rights upon any one. Under the constitution as it existed prior to January 1, 1895, it seems to me there was no prohibition to a person acquiring a new residence by becoming an inmate of an institution of the kind in question here. It was not one of the institutions mentioned in the con-

stitution, as it then existed. Whether a person, by becoming an inmate of it, changed his residence, was largely a question of fact and intention, as in all other cases of change of residence. The nature of the institution itself, as indicated by its name and the statement of its object, shows an intention to provide what should be the last earthly home for the objects of its charity who should become inmates. The petitioner gave evidence of an election upon his part to make it his legal, voting residence, by registering and voting therefrom at the first election after he became an inmate. It seems to me, therefore, that at that time, there being nothing in the law to prevent his gaining a new residence by becoming an inmate of the Home for Aged Men, the nature of his occupancy of such institution giving evidence of his intention to permanently remain there, his registering and voting, all, I think, indicate that he had established and acquired a residence, for voting purposes, prior to January 1, 1895; and, such being the case, it seems to me that the change in the constitution taking effect at that time cannot be held to have deprived him of the right that he then possessed,—not that there is no power, by constitutional provision, to deprive one of such right to vote in a particular locality, or of a right to vote at all, but that the language used is not effectual for that purpose, and was not used with such intent. Let an order be entered as prayed for in the petition.