Argued April 10, decided April 29, 1913.

# DAY v. SALEM.*

(131 Pac. 1028.)

**Elections—Residence—Constitutional Provisions.**

1. Under Article II, Section 4 of the Constitution, providing that, for the purpose of voting, no person shall be deemed to have gained or lost a residence by reason of his presence or absence while employed in the service of the United States, or of the state, the question of the voting residence of attendants at a state institution is to be determined by evidence outside of the fact of their mere presence and employment, for the Constitution does not deprive them of gaining a voting residence at the place of the institution.

[As to domicile, residence, citizenship in the case of students, see note in 48 Am. St. Rep. 717.]

**Municipal Corporations—Powers—Extent—State Territory.**

2. A municipal corporation, being to an extent an arm of the state, may include within its territorial limits state property, such as a state institution for the insane, so long as the municipal ordinances do not encroach upon the sovereign powers of the state; the laws

---

*Acquiring residence as a voter while living at public institution, see notes in 23 L. R. A. 215 and 40 L. R. A. (N. S.) 168.—REPORTER.

allowing the extension of the limits of a municipality being general ones.

[As to two or more political bodies, wholly or partly coincident in territory, as separate bodies, see note in Ann. Cas. 1912C, 449.]

**Municipal Corporations—Petitions—Initiative Petition.**

3. The constitutional provision that a warning clause prohibiting the signing of an initiative petition by one not a voter, or signing more than once, shall be placed at the head of an initiative petition is not mandatory and its omission does not render the petition void.

**Municipal Corporations—Initiative Petition—Sufficiency.**

4. Where the complaint, in an action to enjoin the collection of assessments upon land included in the limits of the city upon an initiative petition, averred, after giving the form of the petition, that 295 names followed in consecutive order, it is insufficient to show that more than 20 names on each sheet were counted in violation of the constitutional provision, and that the petition was thus defective.

From Marion: WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE EAKIN.

This is a suit by N. Day and C. H. Wheeler against the City of Salem, a municipal corporation, Charles Elgin, recorder, Ira Hamilton, city marshal of said City of Salem, Fred Rice, R. D. Allen, Harry P. Minto, respectively assessor, county clerk and sheriff of Marion County, Oregon, to enjoin the collection of taxes.

The facts are as follows: In the year 1910, upon petition of a large number of electors of the City of Salem, the common council took steps to extend the boundaries of the city to include, with other property, lots 17 and 21, block 2, in Glen Oak addition, owned, respectively, by the plaintiffs, and to that end gave notice of a special election to take place on March 28, 1910, designated voting places, and appointed judges and clerks of election in each ward and also in the territory proposed to be annexed. The election was held at said time, resulting in a majority vote both in the city and in the territory annexed for the extension of the boundaries; and the common council thereupon, by resolution, declared the result of the election, and that the said new territory "be and is declared annexed to

and made a part of the corporate territory of the City of Salem.'' Plaintiffs complain that the proper officers of the county of Marion and of the City of Salem are threatening to and will list for assessment and tax the property of these plaintiffs for city purposes, and that the City of Salem, on April 4, 1911, by giving notice of said intended improvement, proceeded to provide for the improvement of Asylum Avenue with concrete pavements through the said annexed territory and adjacent to the said property of these plaintiffs at the expense of the property owners; that thereafter, on June 27, 1911, the said city adopted an ordinance directing said improvement and assessing the cost thereof to the owners of the abutting property, the apportionment of which assessment to each of plaintiffs' lots above described being $228.74; that on July 27, 1910, the said council passed an ordinance for the construction of a sewer on said Asylum Avenue through said annexed territory, and assessed the cost thereof to the owners of the property benefited thereby; and that the lots of plaintiffs, above described, were each assessed in the sum of $78.30, and bring this suit for the purpose of enjoining the City of Salem from assessing the said lots for taxation and from collecting the amount assessed for said improvements, alleging at length the facts above set out and praying that the proceedings by which the limits of the city are extended to include plaintiffs' lots be declared void, and that the liens created for said street improvements be canceled, for the reason that all but a small proportion of the said territory attempted to be annexed to the city is property, the title to which is vested in the State of Oregon in fee, and on which is situated the Oregon State Insane Asylum, and for the further reason that all the votes cast in the annexed territory, namely, 42, were so voted by employees at said asylum, alleging

that said territory belonging to the state cannot be sub-
jected to municipal jurisdiction, and that said em-
ployees are disqualified to vote by reason of such
employment.   A demurrer to this complaint was over-
ruled by the court, and judgment thereon being ren-
dered in favor of plaintiffs, granting the relief prayed
for, defendants appeal.                    REVERSED.

For appellant there was a brief over the names of
*Mr. Grant Corby* and *Mr. Rollin K. Page,* with an oral
argument by *Mr. Corby.*

For respondent there was a brief and an oral argu-
ment by *Mr. William P. Lord, Jr.*

MR. JUSTICE EAKIN delivered the opinion of the
court.

The questions involved here relate to the sufficiency
of the complaint to show that the proceedings of the
city council in attempting to extend the city boundaries
over the plaintiffs' property were void.

1. A large part of the territory attempted to be an-
nexed to the city is ground occupied by the Oregon
State Insane Asylum and other state property; and it
is contended that all of the votes cast in the territory
to be annexed, namely, 42, were cast by employees at
the said asylum, and that therefore they were not resi-
dents in the territory sought to be annexed, and were
not entitled to vote therein, for the reason that by Sec-
tion 4, Article II of the Constitution, it is provided:

"For the purpose of voting, no person shall be
deemed to have gained or lost a residence by reason of
his presence or absence while employed in the service
of the United States, or of this state; nor while engaged
in the navigation of the waters of this state, or of the
United States, or of the high seas; nor while a student
of any seminary of learning; nor while kept at any

almshouse, or other asylum, at public expense; nor while confined in any public prison.''

This court has considered this section of the Constitution in the case of *Wood* v. *Fitzgerald,* 3 Or. 573, and we should be governed by the construction of that section there given, unless we find that it is erroneous. In that case Mr. Justice McARTHUR, who wrote the opinion, says:

''We cannot see the legal·force or propriety of placing such a construction upon that section as would preclude an employee of the United States or state government from making any change ·in his domicile that he may desire to make. Though such an one cannot gain or lose a residence by reason of his presence or absence when employed in the service, yet he can establish his domicile and gain a residence at such a point as he may see fit by taking the proper and appropriate steps so to do, independently of his employment. In *People* v. *Holden,* 28 Cal. 137, it was decided that Section 4 of Article II of the constitution of California (the language of which is almost identical with that of Article II, Section 4, of the constitution of Oregon) does not add to or take from the conditions upon which the fact of residence is made to depend; and it was held that that section meant simply that, in determining the fact of residence, presence or absence in the service of the United States shall not be taken into account, or, in other words, neither presence nor absence in the service of the United States is a condition upon which the fact of residence can be affirmed or denied'': See, also, *Darragh* v. *Bird,* 3 Or. 229; *Silvey* v. *Lindsay,* 107 N. Y. 55 (13·N. E. 444).

In the case of *Warren* v. *Board of Registration,* 72 Mich. 401 (40 N. W. 554, 2 L. R. A. 204), Mr. Justice CAMPBELL, referring to a clause in the Constitution similar to Section 4 of Article II, says: ''These provisions do not prevent such persons from becoming residents, if such is their purpose, and if they are able to choose.''

The reasoning and conclusions of the court in *Wood*
v. *Fitzgerald,* 3 Or. 573, are to the same effect as those
expressed in the opinion of Mr. Chief Justice HOOKER
in *Wolcott* v. *Holcomb,* 97 Mich. 369 (56 N. W. 837, 23
L. R. A. 215), and we think are the correct construction
of Section 4, Article II of the Oregon Constitution. See
note to this case in 23 L. R. A. 215, where the anno-
tator, citing constitutional provisions, says: "This
leaves the question to be determined by evidence out-
side of the fact of presence at such institution, although
a residence may be gained there.". In the case of *Sil-
vey* v. *Lindsay,* 107 N. Y. 55 (13 N. E. 444), the vote
was challenged, and the court held as in *Wood* v. *Fitz-
gerald,* 3 Or. 573, that the residence of the voter must
be determined independently of the fact that he is an
inmate of the soldiers' home. Upon investigation of
the facts, it was held that his residence was in New
York City. In the case of *Powell* v. *Spackman,* 7
Idaho, 692 (65 Pac. 503, 54 L. R. A. 378), the Chief
Justice, in writing the opinion, holds that the voting
*status* of an inmate of the soldiers' home is preserved
as it existed when he entered the home. Mr. Justice
STOCKSLAGER concurs, but Mr. Justice SULLIVAN dis-
sents in a lengthy opinion in which he holds that it is
a matter of intention of the individual. He cites many
cases sustaining his contention, and, among others, the
case of *Wood* v. *Fitzgerald,* 3 Or. 573. The Idaho Con-
stitution contains an additional clause: "While kept
at any almshouse or other asylum at public expense."
Without quoting therefrom, the following cases hold
that it is a matter of intention, even in case of inmates
of charitable institutions, and fully support the opinion
in *Wood* v. *Fitzgerald,* 3 Or. 573: Paine, Elections,
§ 69; *Stewart* v. *Kyser,* 105 Cal. 459 (39 Pac. 19);
*Pedigo* v. *Grimes,* 113 Ind. 148 (13 N. E. 700); *Shaeffer*
v. *Gilbert,* 73 Md. 66 (20 Atl. 434); *Vanderpoel* v.
*O'Hanlon,* 53 Iowa, 246 (5 N. W. 119, 36 Am. Rep.

216); *Putnam* v. *Johnson,* 10 Mass. 487. That being the effect of the constitutional provision, the qualifications of the employees of the state to vote must be determined independently of the fact of such employment. It does not appear that their right to vote was challenged, and it was not alleged that their residence was elsewhere, nor did the plaintiffs set forth any disqualification other than that the electors were such employees; and that is not a ground for a challenge of their votes. The only question raised here is whether the fact of employment in the asylum *ipso facto* disqualifies such employees to vote. We conclude that it does not, and that the law as stated in *Wood* v. *Fitzgerald,* 3 Or. 573, is controlling here. The right to vote depends on the place of residence of the person, and that must be determined independently of and uninfluenced by the fact of employment by the state.

2. It is also alleged that the territory owned by the state cannot be legally annexed to a municipality, for the reason that the sovereign is not bound by the provisions of a general statute unless expressly named therein or included by necessary implication, and that therefore, as I understand plaintiffs' position, the charter authorizing the extension of the boundaries of the city, or the acts and ordinances of the city attempting to include state property within its bounds, cannot be deemed to authorize the extension of the city boundaries to include state territory. The exemption of the sovereign from the application of the statutes, although stated in many decisions and even by textwriters in general terms, is not so broad as the language sometimes used might indicate. The state is not bound by general statutes which affect its prerogatives, rights or interests, unless expressly or by necessary implication it is included therein: 26 Am. & Eng. Ency. Law (2 ed.), 644; 36 Cyc. 1171, 1177; *Matter of City of Utica,* 73 Hun, 256 (26 N. Y. Supp. 564). State

and county property are often within municipal bound-aries, but the municipality can exercise no control over it that will interfere with the sovereign authority; that is, that will tend to restrain or diminish the powers, rights or interests thereof: *United States* v. *Herron,* 20 Wall. 255 (22 L. Ed. 275).

The extent and purpose of this exception in favor of the state is well stated by Mr. Justice BARBOUR in *United States* v. *Knight,* 14 Pet. 315 (10 L. Ed. 465), where the question related to the right of a United States prisoner to jail liberties, in which the judge says:

"It is first objected that whatsoever may be the con-struction of this section, as now governing executions, in case of other parties, yet it does not embrace those issued on judgments rendered in favor of the United States; and this upon the ground that the United States are never to be considered as embraced in any statute, unless expressly named. The words of this section being 'that writs of execution and other final process issued on judgments and decrees rendered in any of the courts of the United States,' it is obvious that the language is sufficiently comprehensive to embrace them, unless they are to be excluded by a construction founded upon the principle just stated. In Bac. Abr., tit. 'Prerogative,' 3–5, it is said that the general rule is that, where an act of parliament is made for the pub-lic good, the advancement of religion and justice, and to prevent injury and wrong, the king shall be bound by such act, though not particularly named therein. But where a statute is general, and thereby any pre-rogative, right, title, or interest is divested or taken from the king, in such case he shall not be bound, unless the statute is made by express words to extend to him. It is a settled principle that the king is not ordinarily barred, unless named by an act of limitations. The principle expressed in the maxim, *'nullum tempus occurrit regi,'* rests upon the ground that no laches

shall be imputed to him. The doctrine that the government should not, unless named, be bound by an act of limitations is in accordance with that just cited from Bacon, because, if bound, it would be barred of a right, and in all such cases is not to be construed to be embraced, unless named, or what would be equivalent, unless the language is such as to show clearly that such was the intent of the act. The same principle has been decided in New York, Massachusetts, Pennsylvania, and, no doubt, in other states, and all upon the same ground. Not upon any notion of prerogative, for even in England, where the doctrine is stated under the head of prerogative, this, in effect, means nothing more than that this exception is made from the statute for the public good; and the king represents the nation. The real ground is a great principle of public policy, which belongs alike to all governments, that the public interest should not be prejudiced by the negligence of public officers, to whose care they are confided'': *Potter* v. *Fidelity & Deposit Co.* (Miss.), 58 South. 714; *County of De Kalb* v. *Atlanta,* 132 Ga. 739 (65 S. E. 72).

In *State* v. *City of Milwaukee,* 145 Wis. 131 (129 N. W. 1101, 22 Ann. Cas. 1212), it is stated that it is presumed that the legislature does not intend to deprive the crown of any prerogative, rights or property unless it expresses its intention so to do in explicit terms or makes the inference irresistible; and in a note to that case in 22 Ann. Cas. 1216, it is said: ''The common-law rule as to the construction of statutes has been said to be subject to these exceptions which are likewise applicable to a state: 'If a statute is intended to give a remedy against a wrong, the king, though not named, shall be bound by it; and the king is impliedly bound by the statutes passed for the public good, the preservation of public rights, and the suppression of public wrongs, the relief and maintenance of the poor, the general advancement of learning, religion, and justice, or for the prevention of fraud.' ''

Most of the cases in which the question has been mentioned relate to statutes touching property rights or delegated power, while in this case, it relates only to the extension of the municipal jurisdiction over the territory occupied by the state to bring it within the police power of the city. When a city seeks to encroach upon the sovereign or prerogative power of the state, it will be time enough to raise the questions here suggested, which the state can do in its own behalf. It is not suggested that the burdens of the plaintiffs will be increased because the state owns a large part of the territory included in the annexation. The city government within its jurisdiction is a delegation of governmental authority conferred upon the city by the state, and like state laws the city laws may be enforced upon state territory as elsewhere, so long as they do not encroach upon its sovereign rights or powers. We conclude that there is no merit in the contention that the city boundaries cannot be extended over territory belonging to the state.

3. In the complaint a copy of the initiative petition is set out, but there is no allegation of defects therein nor objection thereto. Therefore, we assume that the complaint concedes that the petition was sufficient. The only objection to it urged in the brief is that it does not contain the warning clause; but in the case of *Stevens* v. *Benson,* 50 Or. 276 (91 Pac. 577), it is held that the statute providing a warning clause to be placed at the head of the petition is not mandatory, and that its omission does not render the petition void.

4. It is also suggested in the brief that the signatures are not limited to 20 names on each sheet; but that does not appear by the allegations of the complaint. It is only stated, after giving the form, that: "295 names following in consecutive order." Even if on separate sheets they may be said to be in consecutive order, and it is held in *State* v. *Olcott,* 62 Or. 277 (125

Pac. 303), that each sheet need not contain the petition, overruling *Palmer* v. *Benson,* 50 Or. 277 (91 Pac. 579), to that extent, and that it is only necessary that the petition shall be attached to a copy of the title and text of the measure, it not being negatived that this was done.

The notice calling the election is set out in full in the complaint, and the defect alleged therein is set out in subdivision 17 thereof, which we understand to be that two separate proposed annexations were submitted at one election by one notice. However, in plaintiff's brief it is admitted that the notice calling the election required by Section 3209, L. O. L., was duly advertised, and the election regularly held. Therefore we conclude that the complaint does not allege any defects in the proceedings by the city to extend its territory over the territory annexed that render them void, and the demurrer to the complaint should have been sustained.

The decree is reversed, and the suit is dismissed.

REVERSED: SUIT DISMISSED.