(162 App. Div. 332)

### In re ROSEBANK AVE. IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. May 8, 1914.)

1. EMINENT DOMAIN (§ 47*)—ACQUISITION OF LAND FOR STREETS—LAND OF STATE HELD FOR A PUBLIC USE.

 Greater New York Charter (Laws 1901, c. 466) § 970, authorizing the city to acquire title to land to open streets, etc., does not confer authority to take land of the state held for a public use.

 [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 107–120; Dec. Dig. § 47.*]

2. EMINENT DOMAIN (§ 47*)—ACQUISITION OF LAND FOR STREETS—LAND OF STATE HELD FOR A PUBLIC USE.

 Lands of the state in possession of a domestic corporation organized to aid the destitute families of seamen, by providing work at fair remuneration for the female members of the families, and to relieve the necessities of such as are incapable of labor, including widows and or-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

phans, are held for a public charitable purpose and may not·be taken under Greater New York Charter (Laws 1901, c. 466) § 970, for a street.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 107–120; Dec. Dig. § 47.*]

3. EMINENT DOMAIN (§ 317*)—ACQUISITION OF LAND FOR STREETS—EASEMENTS —STATUTORY PROVISIONS.

Laws 1884, c. 514, authorizing a village to open streets through the lands of the state within the village, authorizes only the taking by the village of an easement for street purposes.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 834–840; Dec. Dig. § 317.*]

4. EMINENT DOMAIN (§ 317*)—ACQUISITION OF LAND FOR STREETS—STATUTORY AUTHORITY.

Laws 1884, c. 514, authorizing a village to open streets through the lands of the state within the village, does not, on the village becoming a part of New York City, authorize the city to acquire the fee of the lands for street purposes, though it be assumed that the city may avail itself of the act.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 834–840; Dec. Dig. § 317.*]

5. EMINENT DOMAIN (§ 9*)—ACQUISITION OF LAND FOR STREETS—STATUTORY AUTHORITY.

Laws 1884, c. 514, authorizing a village to open streets through lands of the state within the village, becomes inoperative on the village becoming a part of the city of New York, and the city proceeding to acquire land for streets can only exercise the authority conferred by Greater New York Charter (Laws 1901, c. 466) §§ 442, 970.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 27–34; Dec. Dig. § 9.*]

Appeal from Special Term, Richmond County.

Application by the City of New York for the acquisition of land to open and extend Rosebank Avenue in the Borough of Richmond, City of New York. From an order vacating the proceedings in so far as they affect lands of the State, the party aggrieved appeals. Affirmed.

Argued before JENKS, P. J., and BURR, CARR, STAPLETON, and PUTNAM, JJ.

Patrick S. MacDwyer, of New York City (Joel J. Squier, of New York City, on the brief), for appellant.

Robert P. Beyer, Deputy Atty. Gen., for the People.

JENKS, P. J. The city of New York appeals from an order of vacation of its proceedings to acquire title to certain lands for street purposes in the borough of Richmond, in so far as the proceedings affect lands whose title is in the state of New York. In 1911, the board of estimate and apportionment resolved pursuant to the charter to acquire title to lands and premises required to open and to extend Rosebank avenue, a public street in, said borough.

[1] The learned Special Term was of opinion that the charter did not confer the power upon the city to exercise its general right of eminent domain against the property of the state devoted to a public purpose. I am in accord with this view. The statutory scheme under which the proceedings are taken is in general terms, and there is no

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

provision that includes the state within its expressions. Section 970 of the Charter. I think the more logical and the wiser view is that such a statute does not confer authority to take the lands of the state which are held by it for a public use. Matter of City of Utica, 73 Hun, 256, 26 N. Y. Supp. 564; Inhabitants of Marblehead v. County Commissioners of Essex, 5 Gray (Mass.) 451; Lewis on Eminent Domain, § 414, and cases cited; Elliott on Roads & Streets, § 213. There is a distinction to be made between lands held for the public use and lands held as a proprietor. Elliott on Roads & Streets, supra, note 1.

[2] The lands were acquired originally pursuant to certain statutes, which contemplated the relief of mariners. But thereafter such lands, excepting six acres, were sold by the State Comptroller pursuant to chapter 362 of the Laws of 1882. That act directed also that the seamen's retreat should be closed on July 31, 1882, but it specifically excepted the grounds and buildings occupied by the Mariners' Family Asylum, which are the premises now occupied by said asylum and which are directly affected by the present scheme of improvement. The Mariners' Family Industrial Society of the Port of New York was incorporated in April, 1849, under a special act (chapter 293), with the express purpose of aiding "the destitute families of seamen by providing work at a fair remuneration for the female members of said families and to relieve the necessities of such as are incapable of labor, including their widows and orphans." This corporation is now in the possession of the Mariners' Family Asylum. I think that the ownership of the state is for public purposes as distinguished from ownership that is proprietary. In other words, the state owns these lands as if for public charitable purposes. Kent v. Dunham, 142 Mass. 216–217, 7 N. E. 730, 56 Am. Rep. 667; Bullard v. Chandler, 149 Mass. 532, 21 N. E. 951, 5 L. R. A. 104; Burd Orphan Asylum v. School District, 90 Pa. 21; Saltonstall v. Sanders, 11 Allen (Mass.) 446.

[3, 4] But it is insisted that the power is in the city of New York, pursuant to chapter 514 of the Laws of 1884, an isolated statute that reads as follows:

"Section 1. In opening, extending or widening any street or avenue in the village of Edgewater, it shall be lawful for the trustees of said village and they are hereby authorized to open, extend or widen the same through the lands of the people of the state within the boundaries of said village, provided, however, that no assessment for benefits shall be imposed upon such lands."

The village of Edgewater became by consolidation a part of the city of New York pursuant to chapter 378 of the Laws of 1897, and its government as a village thereby ceased. I am inclined to the view that the effect of this statute was to authorize the then village of Edgewater to extend or widen any street or avenue through such property without compensation to the state. See the remark of the chancellor in Pennsylvania R. R. Co. v. New York and Long Branch R. R. Co., 23 N. J. Eq. 157–160:

"When the state authorizes a corporation or an individual to build roads or bridges upon its property, as the duty to be performed is that of the sovereign delegated to a citizen, it implies the right to proceed without compensation"— case cited; Easton v. New York & L. B. R. Co., 24 N. J. Eq. 53.

See, also, Davis v. R. R., 1 Sneed (Tenn.) 94.

But I am of opinion that this statute cannot be invoked in this proceeding. In the absence of any proof to the contrary, we must presume that the authority in the then village of Edgewater was to take only an easement for street purposes. Paige v. Schenectady Railway Co., 178 N. Y. 102, 111, 70 N. E. 213, and cases cited. And no implication is permissible that the statute granted more than was necessary to satisfy the language and object thereof. Bradley v. Crane, 201 N. Y. 14–25, 94 N. E. 359. But as the purpose of this proceeding is to take a fee, in which event there would be no limitation upon the municipality's ownership (N. Y. C. & H. R. R. R. Co. v. City of Buffalo, 200 N. Y. at 120, 93 N. E. 520), hence, even if the statute was now available to the city of New York, it would not warrant this proceeding.

[5] Further, I think that this statute did not survive, but that the charter provides an entire scheme for the condemnation of such lands, which scheme is complete and exclusive in itself save as other provisions of law may be expressly embodied in it. Sections 442 and 970, Greater New York Charter. See Endlich on Interpretation of Statutes, §§ 200, 201, 202.

The order is affirmed, with $10 costs and disbursements. All concur.