## CITY MAGISTRATE'S COURT—NEW YORK,

### Oct., 1914.

## THE PEOPLE v. JOSEPH ELMER McGONAGLE.
## THE PEOPLE v. EDWARD PYLE.

ELECTIONS—PENAL LAW § 752—ILLEGAL REGISTRATION.
    Persons rendering services in Hospitals in consideration of
    Board and Lodging are not entitled to vote from such institutions.*

*Charles S. Whitman, District Attorney (Millard H. Ellison* and *Royal H. Weller* of counsel), for the People.

*Alfred J. Talley* and *Hiram M. Kirk* for the defendants.

FRESCHI, C. M.:

The district attorney contends that section 752 of the Penal Law, which makes it a felony for any person " to register, or attempt to register as an elector, knowing that he will not be a *qualified voter* in the district at the election for which such registration is made," has been violated by these defendants, in that each of them registered illegally from the places indicated, as below stated.

The application is made for warrants upon complaints which charged that Joseph Elmer McGonagle is and has been an interne in the Central Neurological Hospital connected with the New York City Home for the Aged and Infirm, or what is commonly known as the County Poor House, for the past eight months or thereabouts, during which time he has worked in said hospital as such interne, receiving " his board, lodging, washing and uniform free of charge," and that Edward Pyle

* Following People ex rel. McShane v. Hagan, 48 App. Div. 203.

is a driver in the stable attached to the Metropolitan Hospital, a city hospital under the department of public charities for the care of the dependent poor on Blackwell's Island, City and County of New York, free of charge. The territory in question comprises a part of the Twentieth Election District, Sixteenth Assembly District.

It appears from the proofs adduced before me on the examination herein that neither McGonagle nor Pyle are confined to said institutions by any order of any court, or that either of them is either a patient or an inmate therein; but it is established as a fact for the purposes of this application that both McGonagle and Pyle were permitted to render such services as I have described by the commissioner of public charities, who, it is claimed, employed them and within whose power it is to discharge either or both of these men with or without cause, at any time.

The defendants are not on the list of civil service employees and are not on the payroll of the City of New York, or of any of its departments.

The employment of these men is not authorized, it is claimed by the district attorney, by any statute, law or resolution of any governing body in the City of New York, and that because they are not *bona fide* residents within the meaning of the Constitution of the State of New York, they have no right to register or vote from such institutions.

The defendant McGonagle is married, and voted in the year 1909 from No. 920 Third avenue, in the City of Detroit, State of Michigan, which he stated at the time of registration was the last place from which he voted.

Pyle had a furnished room, and at the time his services were accepted at the hospital he gave up his residence, which was then at No. 835 Third avenue, in Manhattan Borough, New York City.

Since the so-called " place of stay " amendment of the Elec-

tion Law has been passed upon by me (People v. Kurtz, N. Y. Law Journal, October 21, 1914), I will not treat the place from which the defendants registered as equivalent to such residence as qualifies them as voters therefrom. In fact, I am of the opinion that they are not qualified voters from the institutions named (People ex rel. McShane v. Hagan, 48 A. D. 203; aff'd 164 N. Y. 570; see also Silvey v. Lindsay et al., 107 N. Y. 55, 60).

Even if I were to hold that by " place of stay " is meant a domicile or some place having the character of a domicile, and those words were intended to qualify or define the residence of a " qualified voter," as such words are used in the Penal Law (sec. 752), I would still be of the opinion that under the McShane case they are not entitled to vote as residents of these institutions. The " place of stay " amendment, as it is commonly called, cannot be held to give to a citizen who is " kept " as defined by the courts at any of the institutions named in the constitution a residence such as would qualify him to vote therefrom.

The McShane case (*supra*) seems to be controlling here. There the relator was committed by a city magistrate to await the action of the grand jury upon charges of false registration and illegal voting. The ground of the charges was that he had not acquired a legal residence in the election district in which he registered and voted at the election held on November 7, 1899. He was what is known as an " unpaid helper " in Bellevue Hospital, an institution supported at the public expense, and he claimed a residence there. The hospital was situated in the election district in which he registered and voted and he had no other residence in that election district. In that case it was insisted that he was not " kept " in the hospital within the intent and meaning of the third section of the second article of the State Constitution, which provided as follows,—" For the purpose of voting no person shall be deemed to have gained

or lost a residence by reason of his presence or absence while employed in the service of the United States, nor while engaged in the navigation of the waters of the State or the United States or the high seas, nor while a student of any seminary of learning, nor kept at an almshouse or other asylum or institution, wholly or partly supported at public expense or by charity, nor while confined in any public prison."

Mr. Justice Barrett, writing for the court, said at page 204: " The question then is, Was the relator ' kept,' that is, ' supported ' (Silvey v. Lindsay, 107 N. Y. 60), in the hospital? If so, he had neither gained nor lost a residence by reason of his presence there while being so kept or supported."

The solution of this question depends upon his precise legal status in the hospital. It seems clear that he was " kept " in the institution, within the intent of the constitutional provision, if his presence there was not under some contract, express or implied. Even if his presence there were under a contract it does not necessarily follow that he thereby acquired a residence in the institution. But if he was simply an inmate of the hospital, under a bare license—that is, with mere permission to use it as an asylum—then clearly he could not gain a residence there while enjoying the maintenance which it afforded him.

In the case at bar it has been testified to that no one had any authority or warrant in law to make any contract of employment with these defendants and the proof shows that their selection was in pursuance of a custom at these institutions.

My consideration of the McShane case leads me to believe that the court must have had in mind the danger of a corrupt head of department or institution colonizing voters at any one of these places, and had the court decided otherwise than it did persons other than *bona fide* residents could qualify to vote in that particular district. The aim seems to have been to prevent colonization in such institutions by a houseful of inmates. Had

it not been for the McShane case the *bona fides* of each individual case would have been of vital importance.

In the McShane case it is further stated at page 205: "It was in part, at least, to prevent such institutions from being utilized for political purposes that this provision of the constitution was adopted."

McGonagle and Pyle at no time lost their residence, nor did they, or either of them, acquire a residence by going to and staying on Blackwell's Island.

Were it not for the decision of the Appellate Division, affirmed by the Court of Appeals, as above indicated, I would hold that a proper interpretation of the constitution (Art. II, sec. 3) would not deprive men such as internes of the right to vote as residents of the institutions where they claim they are employed and live. While the McShane case is the law, so far as I am concerned for the purposes of making disposition of the cases at bar, still I am of the mind that the makers of the constitution never intended to make it practically impossible for men engaged in such occupation, under the circumstances of their stay at the institution in this case, to vote.

My judgment is that the facts presented justify me in issuing warrants herein.