Matter of the Application of AUGUST MERRILL to Strike from the List or Registry of Voters of the Third Election District of the Eleventh Ward of the City of Utica the Names of JOSEPH E. BRIDGEMAN and Seventeen Others.

(Supreme Court, Oneida Special Term, March, 1917.)

Elections — what is a voting residence — when application to strike names from registry list denied.

For the purpose of voting, the "Home for Aged Men and Couples" in the city of Utica, N. Y. is the residence of its members, and an application to strike the names of male members from the registry list in the election district where the "Home" is located and from which they have voted for years will be denied.

APPLICATION to strike names from voting registry list.

Clarence E. Williams, Jr., for motion.

Theodore L. Cross, opposed.

DEVENDORF, J.   Section 3 of article II of the Constitution of the state of New York provides that: "For the purpose of voting, no person shall be deemed to have gained or lost a residence  *  *  *  while kept at any  *  *  *  institution wholly or partly supported at public expense or by charity." This is supplemented by section 163 of the Election Law, known as chapter 22 of the Laws of 1909, which is identical with the language above quoted, adding, however, a clause as to registration.

It is claimed on the part of the petitioner that these respondents are all inmates of the Home for Aged Men and Couples in the city of Utica and consequently

come within the inhibition of both the Constitution and the statute above stated, and that they neither gain a residence there nor lose it elsewhere and are not entitled to register and vote in the election district where the home is located.

As early as 1882 twenty-eight ladies of the city of Utica and its vicinity associated themselves together to form this corporation. The certificate subscribed by them stated that the object and business of such association is the protection, assistance and support, wholly or in part, of respectable, aged, indigent or infirm men who are unable to support themselves without assistance. The constitution and by-laws of the institution provide that applicants for admission shall be of good character and must pay $300, and in addition thereto convey and transfer to the corporation, by written instrument, all property, both real and personal, owned by him at that time and also any and all property of every description to which he may thereafter become entitled while a beneficiary of said home.

In case of aged couples, they were admitted under the same terms and regulations on payment of $600. Applicants are to be on probation three months and if rejected the money is refunded (less a certain charge for maintenance). At the expiration of said three months the applicant is considered an inmate of the home, *with its privileges for life*. The written agreement and conveyance is then executed and the relative rights and obligations of the parties fixed. In case of violation of the contract by the inmate he may lose the benefits of the home, together with the money and property transferred.

I have been unable to find any decision based upon facts such as are presented here and none has been pointed out to me. I think *Matter of Batterman*, 14

Misc. Rep. 213, cited by the petitioner, is as near the line as any, yet, in view of all the facts disclosed on this motion, it can fairly be distinguished. The case of *Silvey* v. *Lindsay,* 107 N. Y. 55, was a soldier's home case and not applicable to govern the questions involved here. *Matter of Barry,* 164 N. Y. 18; *Matter of Goodman,* 146 id. 284; *Matter of Garvey,* 147 id. 117, were student cases.

The members of this home procured their right of domicile there by purchase and contract. The least sum that will buy it is $300, and together with that amount must go all other property then owned, or subsequently acquired. In this instance members have paid as high as $1,100. The applicant must be upwards of sixty-five years of age when he enters the institution and it can hardly be said that men of that age, paying $600, $800, $1,100, and as much as $1,400, or even $300, could in no event obtain a voting residence there. Neither the Constitution nor the Election Law forbids an inmate of an institution supported wholly or in part by charity having such right, but there is no presumption in favor of it (in fact the presumption is the other way). The intention to change is not alone sufficient, but it must appear by acts independent of his being but an object of charity.

The Constitution also provides that, for the purpose of voting, no person shall be deemed to have gained or lost a residence while a student of any seminary of learning, yet it has been held that a student may acquire residence at the place where the seminary is located. *Matter of Ward,* 29 Abb. N. C. 187. See, also, *Matter of Garvey,* 84 Hun, 613; 147 N. Y. 117. Ex-Chief Judge Andrews said at the Constitutional Convention of 1867, when the meaning of this phrase was under consideration: " If a student had no other residence than where he is attending college, and if

Supreme Court, March, 1917. [Vol. 99.

the intention was with him to remain in that place, although he might be a student there, he would have the right, notwithstanding the insertion of this clause, to vote there." Also said Justice Rumsey: " He may, if he actually has the intention to change his residence, become a resident of the place where he is studying as fairly as if he went to any other place, and in that case he acquired the right to vote."

A person of full age and not under legal restraint has, under the laws of this state, the absolute right to change his residence or domicile when and to what place he will.

The applicant for admission to this home must have been a resident of Oneida county for fifteen years after attaining his majority, or eight years immediately preceding the date of application (as provided by the constitution of the home). Presumably he had the best interest of the community in mind and for years has been a qualified voter of the district. His individual rights are vested in his citizenship and he should not be barred from exercising his right of franchise in the township or city ward where he has purchased a right of domicile, for a valuable consideration, and intends in good faith to reside the remaining days of his life. The home is permanently located. It has sufficient income for maintenance and is now wholly independent of any gift or voluntary contribution of outsiders. Not a dollar of public funds is now, or ever has been, received by it. It does not receive any support or money for maintenance from the state, or any political division thereof, but is sustained entirely by the joint funds and property of the inmates and gifts heretofore made by kind and charitably inclined people. It is not in any manner a public or state institution, or subject to the control of the state board of charities.

These men paid a substantial sum of money for certain rights and transferred all their property, both real and personal, to the institution, and have abandoned their former homes, doing so with the intention of never returning. They severed all property and residential relations with their previous place of abode; their residence there terminated and a new and permanent one was established elsewhere by purchase.

From these facts and their declaration of intention from year to year a jury could infer and the court find, as a matter of fact, that they intended to and had acquired a permanent home and a legal voting residence in this place, and lost it in the former. They are entitled to vote somewhere and, as substantially conceded on the argument and as I understand the fact, have been voting from their present residence for years. That right is now challenged. They may well hesitate to swear to a residence at the place from whence they came, possibly years ago. All their property is elsewhere and their financial and domestic interests are at their present domicile. To go back to the abandoned neighborhood and declare a voting right there would be contrary to previous acts and expressed intention on their part. Therefore, to grant this application would deprive these men of one of the most important privileges of citizenship and take from them that to which they are justly and legally entitled.

In *Matter of Goodman,* 146 N. Y. 289, Judge Finch said, in reference to striking names from the registry: '' This provision applies, not to a case of doubt, not to one resting in some uncertainty or dependent upon inferences of a debatable character, but to a case in which the facts show affirmatively that the intending voter is not and cannot become qualified. If there is dispute about the facts or ground for differing inferences, the judge should not intervene.''

I am inclined to think there may be doubt whether this is what can be said to be a charitable institution so far as the status of these respondents is concerned. They have vested rights and interests here, granted to them for a valuable consideration, and consequent privileges and equities which the courts would protect and enforce. A business venture could be conducted upon almost· exactly the situation which we have here. Assume that the age limit of the applicants is increased, as well as the cash payments required, and men sought whose chances of future acquirement of wealth were good, and we can easily see how an enterprise of that kind might yield a profit to the management. Regardless of that question, however, I have come to the conclusion, for the reasons stated, that the respondents possess a voting residence where they have claimed it in the city of Utica.

The motion is therefore denied, with costs.

Motion denied, with costs.